```
                                                                    1
 1            IN THE UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF TENNESSEE
 2                    NASHVILLE DIVISION

 3  MARGARET CRAIG, as next of      )
    kin and personal                )
 4  representative of the estate    )
    of Angela Hulsey,               )
 5                                  )
              Plaintiff             )
 6                                  )
    vs.                             )  Case No. 3:17-cv-01335
 7                                  )  JURY DEMAND
                                    )  JUDGE CAMPBELL
 8  CHEATHAM COUNTY, TENNESSEE,     )  MAGISTRATE HOLMES
    BEN MOORE, MARK BRYANT,         )
 9  STEPHANIE GIZZI-BELL, JESSICA   )
    PLANK, et al.,                  )
10                                  )

11            Defendants
```

**The deposition of**

**TASHIA BIGGS**

**December 12, 2018**

CHERYL H. CARTER, RPR, LCR, CCR
Accurate Court Reporting
P.O. Box 682683
Franklin, TN 37068
(615) 244-DEPO or 244-3376
www.ACR-Nashville.com

8

1 worked at a call center for CGS.
2   Q.   What's CGS?
3   A.   Cigna -- something for Medicare claims.
4   Q.   Okay.
5   A.   And then I started at the Cheatham County
6 Sheriff's Office in the jail 2014.
7   Q.   All right.  And what did you hire in as?
8   A.   A jailer.
9   Q.   All right. And are you still working for the
10 jail?
11  A.   No, sir.  I'm on patrol now.
12  Q.   All right.  Still working with the sheriff's
13 department?
14  A.   Yes, sir.
15  Q.   Okay.  So give me your transition from jailer
16 to where you are now.
17  A.   I worked in the jail for about two years, and
18 then I transitioned over to patrol.  Went to the police
19 academy 2017.
20  Q.   Get your POST?
21  A.   Yes, sir.
22  Q.   And during the two years that you were at the
23 jail, did you remain a jailer, or did you advance to
24 corporal, sergeant, anything like that?
25  A.   No, sir, I just remained a jailer.

9

1     Q.   Okay.  So after two years, then you
2 transitioned to patrol?
3     A.   Yes, sir.
4     Q.   And that's where you are now?
5     A.   Yes, sir.
6     Q.   Do you have any specific rank?
7     A.   No, sir.
8     Q.   Okay.  Just patrol officer?
9     A.   Yes, sir.
10     Q.   Okay.  So as of October 2016 the -- you were a
11 jailer at the Cheatham County Jail?
12     A.   Yes, sir.
13     Q.   Did you have any other jobs or positions
14 outside of the jail?
15     A.   No, sir.
16     Q.   All right.  Tell me about your training that
17 you received going to the jail.
18     I don't need to know the POST stuff because
19 that's all after this case, but tell me what you
20 received in 2014.
21     A.   I was with a -- I guess she would have been
22 the field training officer for a few days, and then
23 after that, I was I believe it's a year probation where
24 they kind of observe you.
25     Q.   And I'm going to assume -- did you -- were you

1 already certified in CPR or first aid?
2     A.    No, sir.
3     Q.    Okay. Did you have to get those
4 certifications?
5     A.    No, sir.
6     Q.    So you've never completed any kind of CPR
7 training?
8     A.    No, sir, not with the sheriff's office. I did
9 in college.
10     Q.    Okay.
11     A.    But that was -- I think it had expired by the
12 time I got to the sheriff's office.
13     Q.    All right. Tell me what your day-to-day
14 duties or activities were back in October of 2016?
15     A.    If you were in booking, you would do take-ins.
16 Whoever was arrested and brought in, you would do a
17 booking card. Sometimes you would be in the kitchen
18 observing the inmates while they were making breakfast
19 or lunch or dinner; security checks or headcounts for
20 either booking or just the female dorms depending on
21 which shift. When I was on second shift we did female
22 visitation, and I think they had some kind of Bible
23 study or AA classes. If you were on first shift,
24 they -- you would do laundry and things like that.
25     Q.    All right. I think the records show that you

1  were on first shift back in October of 2016 around this
2  time.  Does that sound right to you?
3       A.   Yes, sir.
4       Q.   Okay.  Do you remember who your shift
5  supervisor was?
6       A.   Corporal Moore and Sergeant Arron.
7            MR. USERY:  What was the sergeant's name?  I'm
8  sorry.
9            THE WITNESS:  Arron.
10           MR. USERY:  Arron?
11           THE WITNESS:  Yes, sir.
12      Q.   (By Mr. Moseley)  Did you know Ms. Hulsey?
13      A.   Through work, yes, sir.
14      Q.   Did you know her prior to October of 2016?
15      A.   From previous times that she had been in the
16 jail.
17      Q.   All right.  What did you know about her?
18      A.   Nothing really.  Just whenever she would come
19 into the facility, but other than that, nothing.
20      Q.   Okay.  Did you ever have any problems with
21 her?
22      A.   No, sir, not that I can recall.
23      Q.   Do you know her family at all?
24      A.   No, sir.  I don't know if he's her husband or
25 not, but she would normally come in with Mr. Shivers,

12

1 but I don't know if they were actually legally married
2 or not.  They said they were, but I'm not aware.
3     Q.   They said that to you?
4     A.   To the whole -- well, me and all the other
5 officers.
6     Q.   All right.  How would they say that?
7     A.   Just my husband's in the back, or my wife's up
8 front.
9     Q.   Okay.  Do you have a recollection of when you
10 first saw Ms. Hulsey after she was arrested on
11 October 6th, 2016?
12     A.   Yes, sir.
13     Q.   Okay.  Tell me about that.
14     A.   Someone had hit the buzzer for the big dorm.
15 I went back there.  I think she had used the restroom on
16 herself.  Had stated I guess she didn't feel well.  At
17 that time I went to Corporal Moore and let him know
18 about the situation.  I think he advised the nurse, and
19 she told us to bring her up to booking for medical
20 watch.
21     Q.   Do you know what day that was?
22     A.   I don't, no, sir.
23     Q.   Do you know why the records indicate that she
24 remained in booking from October 6th, 2016, at least
25 until October 9th, 2016?

13

1     A.   I would assume because she was put on med
2 watch, but I'm not 100 percent sure.
3     Q.   All right. Do you have a specific
4 recollection of her being on med watch prior to this
5 incident with the buzzer?
6     A.   No, sir, not that I can recall.
7     Q.   You mentioned she used the restroom on
8 herself.
9     Do you have a recollection of that happening
10 prior to this incident with the buzzer?
11     A.   That's the only time I remember -- or the
12 first time, I guess, I remember it happening. When we
13 brought her up for med watch, I went ahead and put her
14 in the shower so she could clean up.
15     Q.   And did you personally do that?
16     A.   Yes, sir.
17     Q.   Okay. Was the incident with the buzzer logged
18 in any of the logbooks?
19     A.   I don't recall. I would think that when she
20 was brought up to med watch it would have been put maybe
21 that Angela Hulsey to booking for medical watch, but I'm
22 not 100 percent sure.
23     Q.   All right. Who is it that would have the
24 responsibility to put that in some type of log?
25     A.   Normally it would have either been me or

ACCURATE COURT REPORTING (615) 244-DEPO OR 244-3376
Case 3:17-cv-01335   Document 101-5   Filed 06/12/19   Page 7 of 8 PageID #: 565

                                                                23

**REPORTER'S CERTIFICATION**

STATE OF TENNESSEE  )
COUNTY OF DAVIDSON  )

       I, Cheryl H. Carter, LCR #315, RPR #820707, CCR #137, licensed court reporter, in and for the State of Tennessee, do hereby certify that the above deposition transcript of TASHIA BIGGS was reported by me on December 12, 2018, and that the foregoing pages of the transcript are a true and accurate record to the best of my knowledge, skills, and ability.

       I further certify that I am not related to nor an employee of counsel or any of the parties to the action, nor am I in any way financially interested in the outcome of this case.

       I further certify that I am duly licensed by the Tennessee Board of Court Reporting as a Licensed Court Reporter as evidenced by the LCR number and expiration date following my name below.


/Cheryl H. Carter/
Cheryl H. Carter
LCR #315, RPR #820707, CCR #137
LCR Expiration Date 6/30/18
Accurate Court Reporting
P.O. Box 682683
Franklin, Tennessee  37068
Signature Date: December 27, 2018