# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARGARET CRAIG, as next of kin and )
Personal representative of the estate of )
Angela Hulsey, )
                                   )
         Plaintiff, )
                                   )
v. )      Case No. 3:17-cv-01335
                                   )      JUDGE CAMPBELL
                                   )      MAGISTRATE JUDGE HOLMES
CHEATHAM COUNTY, TENNESSEE, )
BEN MOORE, MARK BRYANT, )
STEPHANIE GIZZI-BELL, JESSICA )      JURY DEMAND
PLANK; KEITH PFEIFFER, MICHAEL )
MONTGOMERY, JUSTIN PAUL; BRANDON )
REASONOVER; TASHA BIGGS; )
HARLEY GEROW; JOSH MARRIOTT; )
JEFFREY GOAD; JUDY KING; ROGER )
TEMPLE; JEFFY KEY; JAMES )
BARNUM; and JOHN DOES 1 and 2, )
                                   )
         Defendants. )

---

## DECLARATION OF JOHNNY J. HANNAH

---

I, Johnny J. Hannah, do state and affirm as follows:

1.      I am over 18 years of age. The facts contained in this Declaration are based upon my own personal knowledge.

2.      I am the Jail Administrator for the Cheatham County Sheriff's Office. I have held this position since 2013.

3.      As of October 2016, Cheatham County had contracted with Quality Correctional Health Care (QCHC) to provide on-site health services to inmates and detainees in the Cheatham County Jail. A nurse employed by QCHC, Jessica Plank,

provided on-site coverage at the Jail for forty (40) hours per week. Ms. Plank also was available seven days a week, 24 hours a day by telephone on an as-needed basis in case any Sheriff's Office employees needed to reach him or her. Ms. Plank was supervised by a physician, Dr. Donald Kern. Dr. Kern would visit the Cheatham County Jail once a week to see inmates and detainees. Dr. Kern also was available on an on-call basis seven days a week, 24 hours a day. (See Exhibit 1, HULSEY0272 – HULSEY0281).

4.      As of October 2016, Cheatham County had written policies in effect for medical services at the Jail. These policies are modeled after the Minimum Standards for Local Correctional Facilities contained in Chapter 1400-1 of the Tennessee Rules and Regulations. I have attached the relevant portions of these policies as part of Exhibit 1 to my Declaration. (See Exhibit 1, HULSEY0235-36 – HULSEY0238-39).

5.      Inmates and detainees at the Jail are able to make sick calls on a daily basis. Cells in the Jail are equipped with kiosks so that inmates and detainees can submit written requests for medical treatment. The kiosk also allows the nurse and/or physicians to communicate with the inmate or detainee regarding the request. Angela Hulsey had used the kiosk to request medical care and correspond with the nurse at least eight times between April 29 and May 13, 2015 during a previous detention at the Jail. Ms. Husley also used the intercom in her cell on June 25, 2015 to request medical treatment. She again used the kiosk to request medical care on July 3, 2015. The Cheatham County Jail has no record of Ms. Hulsey using the kiosk to request medical care from October 6 to 12, 2016. (See Exhibit 1, HULSEY0018-HULSEY0025; HULSEY003, HULSEY0035).

6.      Cheatham County Deputy Jeremy Ethridge took Angela into custody on multiple outstanding warrants for failure to appear on Thursday, October 6, 2016 at

approximately 12:50 p.m. See Exhibit 1, HULSEY0423-HULSEY0425). She was booked into the Cheatham County Jail at 1:12 p.m. that day. During the booking process, a corrections officer will ask the detainee several health-related questions. In response to those questions, Ms. Hulsey denied that she was currently taking any medications. When asked if she had any injuries and/or illnesses requiring medical treatment, she only reported that she had fluid in her left knee and leg. She denied having any seizures. She denied having taken any drugs in the previous 24 hours. After she was booked into the Jail, Ms. Hulsey was housed in the dorm with the general female population. (See Exhibit 1, HULSEY0047 – HULSEY0048).

7.　　Ms. Hulsey saw the nurse on duty, Jessica Plank, on Monday, October 10, 2016. Following that visit, Ms. Hulsey was placed on medical watch. She was moved from the general population dorm to a cell in the booking area at approximately 2:00 p.m. Corrections officers observe detainees on medical watch approximately once per hour. Officers record the time of their observation and the detainee's activity they observe, and then initial the form. The Cheatham County Jail records this information on two separate forms, one of which is provided by QCHC and one prepared by Cheatham County.

8.　　When officers began recording Ms. Hulsey's activities on October 10 at 2:00 p.m., she was sitting at the booking counter. Between 3:00 and 9:15 p.m., she was either lying or sitting on a mat, taking a shower, or walking around in her cell. When the third shift came on duty at 10:00 p.m. on October 10, Ms. Hulsey was lying down, but awake. By 4:05 a.m. on Tuesday, October 11, 2016, Ms. Hulsey was asleep.

9.　　Ms. Hulsey saw Ms. Plank again on October 11, 2016. Ms. Hulsey asked to be moved back to the general population, where she remained for the next several

3

hours. However, she was brought back to the medical observation cell at 9:40 p.m. on October 11, 2016. Sergeant Mark Bryant gave the Plaintiff Tylenol at 9:45 p.m. Ms. Hulsey was placed back in the medical observation cell at 9:50 p.m. (See Exhibit 1, HULSEY0051 – HULSEY0061).

10. The third shift began observing Ms. Hulsey on October 11, 2016 at 10:00 p.m. At that time, she was lying down on a mat. Officers observed her lying down or sitting on her mat between 10:00 p.m. on October 11 and 5:10 a.m. on Wednesday, October 12, 2016. When the first shift began observing Ms. Hulsey at 6:00 a.m. on October 12, 2016, she was lying down. By 6:52 a.m., she was sitting on her mat. Ms. Hulsey saw Ms. Plank at 8:30 a.m. again that morning. Approximately 40 minutes later, she was found unresponsive in her cell. 911 was called at 9:15 a.m. (See Exhibit 1, HULSEY0062 – HULSEY0074; HULSEY0109 – HULSEY0110; HULSEY0137).

11. The records attached to my Declaration were made at or near the time indicated by someone with knowledge of the information recorded. The records are kept in the normal course of regularly conducted activities of the Cheatham County Sheriff's Office. Making these records are the regular practice of the Cheatham County Sheriff's Office. In my capacity of Jail Administrator, I am the custodian of these records.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and information.

Johnny J. Hannah

NASHVILLE 38391-783 692966v1

# EXHIBIT 1

## Report - Inmates Request History Detail

| Request ID | Date Added | Inmate | Subject | Request | Status Info | Notes for Admin | Notes for Inmate |
|---|---|---|---|---|---|---|---|
| 206916 | 04/29/2015 11:28:16 pm | ANGELA HULSEY Inmate ID: 135891 | visit | i have a bad ear infection,tooth ache need to b treated | Resolved Substantiated Status By:ELLA TAYLOR Status Date:04/30/2015 Status Time:08:12:28 am | nurse call 10.00 r x 5.00 | inmate seen and t reated per protoc ol |

https://www.tbejail.com/print_request_detailed.php?date_from=3/30/2015&date_to=4/30/...    4/30/2015

## Report - Inmates Request History Detail

| Request ID | Date Added | Inmate | Subject | Request | Status Info | Notes for Admin | Notes for Inmate |
|---|---|---|---|---|---|---|---|
| 210294 | 05/04/2015 08:51:52 am | ANGELA HULSEY Inmate ID: 135891 | ear infection | please dont forget about me seeing the doctor my ear infection is not gonna go away without proper treatment this pain is no joke | Resolved Substantiated Status By:ELLA TAYLOR Status Date:05/04/2015 Status Time:10:55:24 am | | seen by dr today |

https://www.tbejail.com/print_request_detailed.php?date_from=4/4/2015&date_to=5/4/201...    5/4/2015

## Report - Inmates Request History Detail

| Request ID | Date Added | Inmate | Subject | Request | Status Info | Notes for Admin | Notes for Inmate |
|---|---|---|---|---|---|---|---|
| 210327 | 05/04/2015 09:25:24 am | ANGELA HULSEY Inmate ID: 135891 | pain | what am i supposed to do about the pain it hurts so bad | Resolved Substantiated Status By:ELLA TAYLOR Status Date:05/04/2015 Status Time:10:54:32 am | | seen by site md today |

https://www.tbejail.com/print_request_detailed.php?date_from=4/4/2015&date_to=5/4/201...    5/4/2015

## Report - Inmates Request History Detail

| Request ID | Date Added | Inmate | Subject | Request | Status Info | Notes for Admin | Notes for Inmate |
|---|---|---|---|---|---|---|---|
| 213245 | 05/06/2015 08:34:46 pm | ANGELA HULSEY Inmate ID: 135891 | ear pain | my ear pain is extremly bad and needs treatment the doctor oviously dont know cause its not him having the pain look it hurts extremly bad so i would appreciate if it would b treated properly so it will stop completely. | Resolved Substantiated Status By:ELLA TAYLOR Status Date:05/07/2015 Status Time:06:08:17 am | | you saw the dr he diagnosed and tr eated you if you want to see him a gain on Monday t hat can be done |

## Report - Inmates Request History Detail

| Request ID | Date Added | Inmate | Subject | Request | Status Info | Notes for Admin | Notes for Inmate |
|---|---|---|---|---|---|---|---|
| 213420 | 05/07/2015 07:24:28 am | ANGELA HULSEY Inmate ID: 135891 | ear pain | yes i did but i know i have an affected tooth that runs bad ear pain and its not gonna stop until i get the antibiotics it requires . i should know its my body, ive been through this before. | Resolved Substantiated Status By:ELLA TAYLOR Status Date:05/08/2015 Status Time:07:10:22 am | | This is the last time I will have this discussion with you , 1.) you saw the Dr he diagnosed you with TMJ he looked in your ears and saw nothing that indicated a infection, now you say it is you tooth, DID YOU MENTION THAT TO HIM ? 2.) your currently being given a anti-inflammatory which till reduce pain and swelling If you would like to see him again on Monday and discuss how he misdiagnosed you I wll place you on the list 3.) if the medication is not working then refused it you have the right to refuse all or any medical care It is optional |

## Report - Inmates Request History Detail

| Request ID | Date Added | Inmate | Subject | Request | Status Info | Notes for Admin | Notes for Inmate |
|---|---|---|---|---|---|---|---|
| 216515 | 05/11/2015 10:48:00 am | ANGELA HULSEY Inmate ID: 135891 | doc | bobby said i was on list to c doctor just making sure i am please | Resolved Substantiated Status By:ELLA TAYLOR Status Date:05/12/2015 Status Time:08:56:23 am | rx 5.00 dr call 10.00 | inmate seen by dr |

## Report - Inmates Request History Detail

| Request ID | Date Added | Inmate | Subject | Request | Status Info | Notes for Admin | Notes for Inmate |
|---|---|---|---|---|---|---|---|
| 218079 | 05/13/2015 02:27:31 am | ANGELA HULSEY Inmate ID: 135891 | tooth | i need to know how much it costs to have a tooth pulled and how do i go about getting it done | Resolved Substantiated Status By:ELLA TAYLOR Status Date:05/13/2015 Status Time:10:51:44 am | | it is about 150.00 you can have family prepay or have bobby taken off your commissary account on you have a payment arrangement set up I make the appt and have transportation set up with Lt. Hannah |

## Report - Inmates Request History Detail

| Request ID | Date Added | Inmate | Subject | Request | Status Info | Notes for Admin | Notes for Inmate |
|---|---|---|---|---|---|---|---|
| 218407 | 05/13/2015 01:13:03 pm | ANGELA HULSEY Inmate ID: 135891 | tooth | how do i go about setting up a payment plan | Resolved Substantiated Status By:ELLA TAYLOR Status Date:05/15/2015 Status Time:11:12:19 am | | taken care of per Lt. Hannah |

# Cheatham County Sheriff's Office

| Date | Day | Time | Location | Nature of Incident | Reporting Officer |
|------|-----|------|----------|-------------------|-------------------|
| 06/25/2015 | WEDNESDAY | 2325 | ISO | MEDICAL | CPL. BEN MOORE |

**Inmates Involved:**

ANGELA HULSEY

**Officers Involved:**

MOORE

## Narrative

While in booking inmate Hulsey called on the intercom and complained of having chest pains and felt like her Blood pressure was high. I checked Inmate Hulsey's blood pressure and it read right arm-157/109 pulse 79...left arm- 158/108 pulse 90. Her blood pressure had went up from her last check at 1739 hrs by evening shift. I called the nurse and she spoke with the doctor and I was instructed the give inmate Hulsey one Nitroglycerin pill and to retake her blood pressure after an hour had passed. at 0034 I rechecked inmate Hulsey's blood pressure and it read right arm-124/91 pulse 69...left arm- 113/76 pulse 65. Hulsey stated she felt a lot better and wasn't having chest pains. E.O.R.

06 29 15

**Action Taken:**

REPORT WRITTEN

| Officer Signature | Supervisor Signature | Date / Time Received |
|-------------------|---------------------|---------------------|
| CPl. Ben Moore | Paul Gani | 6-25-15  0430 |

# Reply to Inmate Medical Request

Inmate: ANGELA HULSEY

Location: ISO

Kiosk Name: ISO

Subject: chest

Assigned To: All

Entry ID: 261561

Inmate ID: 96721

Kiosk ID: 1111

Allow Inmate to View Subject/ Contents:

Request: my chest is still hurting,im getting dizzy and seeing spots so this issue hasnt been resolved.

Date Added: Jul 3, 2015 - 3:46 am

Fee: 0.00

Status:

Resolved Substantiated

Notes for Admin:

Notes for Inmate: You are scheduled to be seen.

*Flu I MD on 7-6-15*

# CHEATHAM COUNTY SHERIFF'S OFFICE
## Jail Management - Intake Report

| Agency | CHEATHAM COUNTY SHERIFF OFFICE | Booking # | 161006-0062 | Arrest # |
|---|---|---|---|---|

| Intake Date | 10/6/2016 | Intake Time | 13:12 |
|---|---|---|---|

### Arrestee

| Name | HULSEY, ANGELA DENISE | | |
|---|---|---|---|
| Address | 1915 HIGHWAY 12 NORTH ASHLAND CITY TN 37015 | | |
| Phone | .615-981-1014 | Sex | F |
| DOB | ████1982 (34) | Race | W |
| SSN | *******6721 | Ethnic. | N |
| DL | 091975203 TN | Height | 5'02" |
| FBI | | Weight | 120 |
| JRN | 1610060062 | Hair | BRO |
| DOC | | Eyes | BRO |
| SID | | MID | |

### Other

| Bias Description | NONE (NO BIAS) | Attorney | | |
|---|---|---|---|---|
| Housing Facility | FEMALE DORM | Cash | $0.00 | |
| Cell | 4 - MISDEMEANOR NON-SENTENCE | | Status | IN CUSTODY |
| Arrest Location | CHEATHAM | | | |
| Offense Location | CHEATHAM | | | |
| Property Location | | | | |

### Questions

| Number | 02 | Category | BOOKING | Answer | |
|---|---|---|---|---|---|
| Question | WHAT IS YOUR PLACE OF BIRTH? | | Answer Desc. | NASHVILLE TN | |

| Number | 04 | Category | BOOKING | Answer | N |
|---|---|---|---|---|---|
| Question | ARE YOU REQUIRED BY LAW TO REGISTER AS A SEX OFFENDER? | | Answer Desc. | | |

| Number | 03 | Category | BOOKING | Answer | Y |
|---|---|---|---|---|---|
| Question | ARE YOU A CITIZEN OF THE UNITED STATES? | | Answer Desc. | | |

| Number | 01 | Category | BOOKING | Answer | Y |
|---|---|---|---|---|---|
| Question | WERE YOU GIVEN THE OPPORTUNITY TO USE THE PHONE? | | Answer Desc. | 10/07/2016 2152 BR 10/08/2016 @ 1338 JP 10/09/2016 @ 0945 DRH USED 5MIN 10-09-16 @ 1510 JK | |

| Number | 05 | Category | MEDICAL | Answer | N |
|---|---|---|---|---|---|
| Question | ARE YOU TAKING MEDICATION AT THIS TIME? IF YES, WHAT KIND, HOW MUCH AND WHEN? WHO IS YOUR DOCTOR? | | Answer Desc. | | |

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 18 of 62 PageID #: 771

| Number | 06 | Category | MEDICAL | | Answer Y |
|--------|-----|----------|---------|--------------|----------|
| Question | DO YOU HAVE ANY INJURIES AND/OR ILLNESS THAT NEED TREATMENT AT THIS TIME? IF YES, WHAT FOR? | | | Answer Desc. | FLUID IN LEFT KNEE AND LEG |

| Number | 07 | Category | MEDICAL | | Answer N |
|--------|-----|----------|---------|--------------|----------|
| Question | DO YOU HAVE SEIZURES? | | | Answer Desc. | |

| Number | 08 | Category | MEDICAL | | Answer N |
|--------|-----|----------|---------|--------------|----------|
| Question | ARE YOU A DIABETIC? | | | Answer Desc. | |

| Number | 09 | Category | MEDICAL | | Answer N |
|--------|-----|----------|---------|--------------|----------|
| Question | LIST ANY MEDICATIONS IN PRISONERS POSSESSION AT TIME OF BOOKING. | | | Answer Desc. | |

| Number | 10 | Category | MEDICAL | | Answer N |
|--------|-----|----------|---------|--------------|----------|
| Question | HAVE YOU TAKEN ANY DRUGS IN THE LAST 24 HOURS? IF YES, WHAT KIND, HOW MUCH, AND WHEN? | | | Answer Desc. | |

| Number | 11 | Category | MEDICAL | | Answer N |
|--------|-----|----------|---------|--------------|----------|
| Question | HAVE YOU ATTEMPTED SUICIDE IN THE LAST 24 HOURS? IF YES, WHAT METHOD? | | | Answer Desc. | |

| Number | 12 | Category | MEDICAL | | Answer |
|--------|-----|----------|---------|--------------|----------|
| Question | IF YES TO ANY OF THESE QUESTIONS, CALL NURSE. | | | Answer Desc. | |

| Number | 13 | Category | MEDICAL | | Answer |
|--------|-----|----------|---------|--------------|----------|
| Question | SIGN HERE TO CERTIFY THE INFORMATION GIVEN AT BOOKING | | | Answer Desc. | |

| Number | 14 | Category | MEDICAL | | Answer Y |
|--------|-----|----------|---------|--------------|----------|
| Question | DO YOU HAVE HEALTH/MEDICAL INSURANCE? (ADD PHOTO OF INSURANCE CARD TO MEDIA) | | | Answer Desc. | TENN CARE |

| Number | 15 | Category | MEDICAL | | Answer |
|--------|-----|----------|---------|--------------|----------|
| Question | IF SO WHO IS THE PROVIDER? POLICY #? AND PHONE NUMBER? | | | Answer Desc. | |

10/12/16

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 19 of 62 PageID #: 772



## HEADACHE

*Start of Protocol- 10/11/16 as evening shift reports

**(S)** **SUBJECTIVE**

1. Cause of headache? _unsure - doesn't feel well_ How long? _since_
2. Recent trauma? Yes ☐ No ☑ if yes, describe:
3. Location of pain: _top head_ Describe character (sharp, dull, stabbing, etc): _Sharp_
4. Pain scale: 1   2   3   4   5   ⑥   7   8   9   10   (10 being worse)
5. Dizziness? Yes ☐ No ☑ Visual changes? Yes ☐ No ☑
6. Nausea? Yes ☑ No ☐ Vomiting? Yes ☐ No ☑
7. Is this a chronic problem (several weeks, months, or longer)? Yes ☐ No ☑
8. Have you received treatment by a NP or MD in the past for headaches? Yes ☐ No ☑
9. What type of treatment did you receive? _____
10. History of migraines? Yes ☐ No ☑ History of hypertension? Yes ☐ No ☑ HIV+ Yes ☐ No ☐ ?
11. History of sinus problems? Yes ☐ No ☑
12. Other: _____

**(O)** **OBJECTIVE**

Medication Allergy Review ☐

1. Appears in acute distress? _110/60_ Yes ☐ No ☑
2. Temperature: _98.0_ Blood Pressure: _98_ Pulse: _92_ Respirations: _18_
3. Alert and Oriented X 3 Yes ☑ No ☐   02-97%
4. Pupils equal and reactive to light? Yes ☑ No ☐
5. Are facial features symmetrical? Yes ☑ No ☐
6. Does patient appear to be lethargic? Yes ☐ No ☑
7. Does patient have any signs of trauma? Yes ☐ No ☑ if yes, describe: _____
8. Is patient sensitive to light? Yes ☐ No ☐ _unsure_
9. Other: _____

**(A)** **ASSESSMENT:** Alteration in Comfort

**(P)** **PLAN OF CARE:**

**NURSING INTERVENTION:**

| | | Check box if completed |
|---|---|---|
| 1. | Acetaminophen 325mg (2) tabs po BID x 24 hrs. **OR** | ☑ |
| 2. | Ibuprofen 200mg (2) tabs BID x 24 hrs. | |
| 3. | Instruct inmate per Inmate Education and to return if no improvement | ☐ |
| 4. | Refer to NP, or MD if outside of scope of practice | ☐ |
| 5. | Signed Release of Information if previous treatment | ☐ |

**Findings requiring referral to NP or MD:**

1. Appears in acute distress ☐
2. Temperature > 101 ☐
3. If onset sudden and unexplained ☐
4. Trauma, stiff neck, or mental status changes ☐
5. Describes as worst headache ever ☐
6. Dizziness, nausea or vomiting ☐
7. Visual disturbance or unequal pupils ☐
8. Numbness, weakness, or facial asymmetry ☐
9. After second visit for the same problem ☐
10. HIV+ ☐
11. Blood pressure > 140/90 ☐

**FOLLOW-UP:**
Sick call if no improvement or worsening

Inmate Name: _Hulsey, Angela_ ID #: _____ Allergies _____

Nurse Signature: _Jessica Clark LPN_ Date: _10/12/16_ Time _8:30_   APX: 

0912NP-HEA

Name _____ Last _____ First _____ Middle Initial

Date _____ Allergies _____

Inmate # _____

Facility _____

SIG.

Physician Signature: _____                                    4

---

Name _____ Last _____ First _____ Middle Initial

Date _____ Allergies _____

Inmate # _____

Facility _____

SIG.

Physician Signature: _____                                    3

---

Name _____ Last _____ First _____ Middle Initial

Date _____ Allergies _____

Inmate # _____

Facility _____

SIG.

Physician Signature: _____                                    2

---

Name _Hulsey,_ Last _Angela_ First _____ Middle Initial

Date _10/11/16_ Allergies _____

Inmate # _____

Facility _____

SIG. Tylenol 325mg ii PO BID X 24h

**NURSING PROTOCOL**

Physician Signature: _Jessica Blankins_                             1

QCHC
QUALITY CORRECTIONAL HEALTH CARE

021INLPOR

Medical

# ~~SUICIDE~~ WATCH INMATE ACTIVITY LOG

OFFICERS ON SHIFT: Temple, King, Marriott, Goad, Key, Gerow, Myres

INMATE NAME: Angela Hulsey _____ DATE: 10-10-16 SHIFT: 2nd

| TIME | INMATE ACTIVITY | OFFICER |
|------|-----------------|---------|
| 1400 | Sitting at Booking counter | JM |
| 1500 | se laying on mat | |
| 1615 | in Shower | SG |
| 1700 | Sitting on Malt | SG |
| 1800 | laying on mat | SG |
| 1900 | Walking around Cell | TK |
| 2016 | Laying on MATH | RT |
| 2115 | LAYING ON MAT | 4M |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Medical

~~SUICIDE~~ WATCH INMATE ACTIVITY LOG

OFFICERS ON SHIFT: _Temple, King, MARRiott, Goad, Key, Gerow, Myres_

INMATE NAME: _Angela Hulsey_     DATE: _10-10-16_   SHIFT: _2nd_

| TIME | INMATE ACTIVITY | | OFFICER |
|------|-----------------|---|---------|
| 1400 | Sitting at Booking counter | | JK |
| 1500 | se laying on mat | | |
| 1615 | in Shower | | JG |
| 1700 | Sitting on Malt | | JG |
| 1800 | laying on mat. | | JG |
| 1900 | Walking around cell | | KH |
| 2016 | Laying on mat | | RL |
| 2115 | LAYING ON MAT | | 4h |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

REV. 02/23/16 (1/1)

# _Medical_ **WATCH INMATE ACTIVITY LOG**

OFFICERS ON SHIFT: Sgt Barnum , FTO Burress

INMATE NAME: Angela Hulse      DATE: 10-10-16      SHIFT: 3

| TIME | INMATE ACTIVITY | OFFICER |
|------|-----------------|---------|
| 2200 | laying down awake | |
| 2300 | laying down awake | |
| 2319 | laying down middle | |
| 0002 | laying down | |
| 0107 | laying down | |
| 0202 | laying down awake | |
| 0325 | laying down awake | |
| 0405 | laying down, asleep. | |
| 0418 | sitting down quiet | |
| 0507 | laying down | |
| 0540 | LAYING DOWN | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

REV. 02/23/16 (1/1)

HULSEY 0058

# Medical WATCH INMATE ACTIVITY LOG

OFFICERS ON SHIFT: Sgt Barnum, FTO Burress

INMATE NAME: Angela Hulse     DATE: 10-10-16     SHIFT: 3

| TIME | INMATE ACTIVITY | OFFICER |
|------|-----------------|---------|
| 2200 | laying down awake | |
| 2300 | laying down awake | |
| 2319 | laying down awake | |
| 0002 | laying down | |
| 0107 | laying down | |
| 0202 | laying down awake | |
| 0325 | laying down awake | |
| 0405 | laying down asleep. | |
| 0418 | sitting laying down quiet | |
| 0507 | laying down | |
| 0540 | LAYING DOWN | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# MEDICAL WATCH INMATE ACTIVITY LOG

OFFICERS ON SHIFT: _Cpl. Bryant, J. Key, J. Marriott,_

INMATE NAME: _Hulsey, Angela_    DATE: _10-11-16_    SHIFT: _2nd_

| TIME | INMATE ACTIVITY | OFFICER |
|------|-----------------|---------|
| 2140 | Brought to booking for medical observation | |
| 2145 | Cpl. Bryant gave her the medication per nurse. | |
| 2150 | Placed in cell #3 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

REV. 02/23/16 (1/1)

# MEDICAL WATCH INMATE ACTIVITY LOG

OFFICERS ON SHIFT: Cpl. Bryant, J.Key, J. Marriott,

INMATE NAME: Hulsey, Angela          DATE: 10-11-16     SHIFT: 2nd

| TIME | INMATE ACTIVITY | OFFICER |
|------|-----------------|---------|
| 2140 | Brought to booking for medical observation | |
| 2145 | Cpl. Bryant gave her the medication per nurse. | |
| 2150 | Placed in cell #3 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

REV 02/25/16 (1/1)

# MEDICAL WATCH INMATE ACTIVITY LOG

OFFICERS ON SHIFT: Cpl Montgomery, Moeller, Hagguh, Blank, Sgt Burnum

INMATE NAME: Angela Hulsey          DATE: 10-11-16          SHIFT: 3rd

| TIME | INMATE ACTIVITY | OFFICER |
|------|-----------------|---------|
| 2200 | Layin on mat | au |
| 2300 | Layin down wnts Ice (water) | au |
| 0001 | Layin on mat | au |
| 0100 | Layin on mat | au |
| 0200 | Layin on mat talking | au |
| 0301 | Lain on mat | au |
| 0409 | Sittin mat settle enuf to lay down | au |
| 0510 | Sittin on mat | au |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

REV. 02/23/16 (1/1)

# MEDICAL WATCH INMATE ACTIVITY LOG

OFFICERS ON SHIFT: Cpl Montgomery Moteller, Haegerly Blank, Sgt Barnum

INMATE NAME: Angela Hulsey          DATE: 10-11-16          SHIFT: 3rd

| TIME | INMATE ACTIVITY | OFFICER |
|------|-----------------|---------|
| 2200 | Layin on mat | an |
| 2300 | Layin down w/ Ice (Ice) | an |
| 0001 | layin on mat | an |
| 0100 | layin on mat | an |
| 0200 | layin on mat talky | an |
| 0301 | layin on mat | an |
| 0409 | Sittin on mat gets ready to lay down | an |
| 0510 | Sittin on mat | an |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

REV. 02/23/16 (1/1)

# MEDICAL WATCH INMATE ACTIVITY LOG

OFFICERS ON SHIFT: Moore, Reasonover, Scruggs, Hibert, Gizzibell

INMATE NAME: Angela Hulsey        DATE: 10-12-16        SHIFT: 1st

| TIME | INMATE ACTIVITY | OFFICER |
|------|-----------------|---------|
| 0600 | Laying on mat | PB |
| 0650 | Sitting on mat | AP |
| 0812 | Sitter at counter, shakmy | |
| 0910 | Sittn dan in cell, Quiet | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# MEDICAL WATCH INMATE ACTIVITY LOG

OFFICERS ON SHIFT: Moore, Reasonover, Scruggs, Hebert, Grizzibell

INMATE NAME: Angela Hulsey     DATE: 10-12-16     SHIFT: 1st

| TIME | INMATE ACTIVITY | OFFICER |
|------|-----------------|---------|
| 0600 | Laying on mat | |
| 0650 | Sitting on mat | |
| 0812 | Sitta at corner, shakin | |
| 0910 | Sitta down in cell, quiet | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# MEDICAL WATCH INMATE ACTIVITY LOG

OFFICERS ON SHIFT: Moore, Reasonover, Scruggs, Hebert, Gizzibell

INMATE NAME: Angela Hulsey   DATE: 10-12-16   SHIFT: 1st

| TIME | INMATE ACTIVITY | OFFICER |
|------|-----------------|---------|
| 0600 | Laying on Mat | |
| 0650 | Sitting on mat | |
| 0812 | Sitta at comer, shakin | |
| 0910 | Sitta down in cell, Quiet | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

REV. 02/23/16 (1/1)

# Observation Cell Record

Inmate Name: _Angela Hulsey_  Cell: 3

Date/Time Placed in Cell _____ Placed in Cell by: _____

Basis for Placement (circle)  (Medical Observation)  Detoxification  Suicide Precautions

Officer Notified:_____  Date and Time: 10-10-16

Observation Frequency: _____

| Monitoring Log | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Activity Codes: 1=Check, 2=Yelling, 3=Crying, 4=Sleeping, 5=Quiet, 6=Relaxed, 7=Walking, 8=Sitting, 9=Fluids accepted, 10=Fluids refused, 11=Meal accepted, 12=Meal rejected, 13=Shower, 14=Toilet, 15=Nurse visit, 16=Range of motion, 17=Doctor visit | | | | | | | | | | | |
| Date | Time | Activity | Initials | Date | Time | Activity | Initials | Date | Time | Activity | Initials |
| 10-10 | 0940 | 1, 8 | TB | | | | | | | | |
| 10-10 | 1015 | 1, 8 | | | | | | | | | |
| 10-10 | 1056 | 1, 5 | | | | | | | | | |
| 10-10 | 1117 | 1, 4 | | | | | | | | | |
| 10-10 | 1136 | 1, 4 | | | | | | | | | |
| 10-10 | 1150 | 1, 11 | | | | | | | | | |
| 10-10 | 1225 | 1, 8 | | | | | | | | | |
| 10-10 | 1238 | 1, 13 | TB | | | | | | | | |
| 10-10 | 1375 | 1, 8 | | | | | | | | | |
| 10-10 | 1338 | 1, 8 | TB | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Date/Time Returned to General Population: _____  Approved by:_____

TIME : 12/19/2016 12:14
NAME :
FAX :
TEL :
SER.# : U62701E4N940790

DATE,TIME                    12/19  12:12
FAX NO./NAME                 16157431892
DURATION                     00:02:17
PAGE(S)                      08
RESULT                       OK
MODE                         STANDARD
                             ECM

## Observation Cell Record

**Inmate Name:** Angela Hulsey          **Cell:** 3

Date/Time Placed in Cell _____     Placed in Cell by: _____

Basis for Placement (circle)  (Medical Observation)  Detoxification   Suicide Precautions

Officer Notified: _____          Date and Time: 10-10-16

Observation Frequency: _____

### Monitoring Log

Activity Codes: 1=Check, 2=Yelling, 3=Crying, 4=Sleeping, 5=Quiet, 6=Relaxed, 7=Walking, 8=Sitting, 9=Fluids accepted, 10=Fluids refused, 11=Meal accepted, 12=Meal rejected, 13=Shower, 14=Toilet, 15=Nurse visit, 16=Range of motion, 17=Doctor visit

| Date | Time | Activity | Initials | Date | Time | Activity | Initials | Date | Time | Activity | Initials |
|------|------|----------|----------|------|------|----------|----------|------|------|----------|----------|
| 10-10 | 0940 | 1,8 | TB | | | | | | | | |
| 10-10 | 1015 | 1,8 | ce | | | | | | | | |
| 10-10 | 1036 | 1,5 | ce | | | | | | | | |
| 10-10 | 1117 | 1,4 | | | | | | | | | |
| 10-10 | 1136 | 1,4 | | | | | | | | | |
| 10-10 | 1150 | 1,11 | | | | | | | | | |
| 10-10 | 1245 | 1,8 | | | | | | | | | |
| 10-10 | 1238 | 1,13 | (TB) | | | | | | | | |
| 10-10 | 1325 | 1,5 | | | | | | | | | |
| 10-10 | 1338 | 1,8 | TB | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

# Observation Cell Record

Inmate Name: _Angela Hulsey_      Cell: __3__

Date/Time Placed in Cell _____ Placed in Cell by: _____

Basis for Placement (circle)   Medical Observation   Detoxification   Suicide Precautions

Officer Notified: _____ Date and Time: _____

Observation Frequency: __1 hr__

| Monitoring Log | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Activity Codes: 1=Check, 2=Yelling, 3=Crying, 4=Sleeping, 5=Quiet, 6=Relaxed, 7=Walking, 8=Sitting, 9=Fluids accepted, 10=Fluids refused, 11=Meal accepted, 12=Meal rejected, 13=Shower, 14=Toilet, 15=Nurse visit, 16=Range of motion, 17=Doctor visit | | | | | | | | | | | |
| Date | Time | Activity | Initials | Date | Time | Activity | Initials | Date | Time | Activity | Initials |
| 10-10 | 1400 | 1,5 | JM | | | | | | | | |
| 10-10 | 1500 | 1,5 | OK | | | | | | | | |
| 10-10 | 1615 | 1,13 | JG | | | | | | | | |
| 10-10 | 1700 | 1,5 | JG | | | | | | | | |
| 10-10 | 1800 | 1,5 | JG | | | | | | | | |
| | 1900 | 1,7 | AB | | | | | | | | |
| | 1915 | 1,7 | | | | | | | | | |
| | 2016 | 15,6 | RT | | | | | | | | |
| | 2115 | 1,5,6 | HM | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Date/Time Returned to General Population: _____ Approved by: _____

HULSEY 0068

# Observation Cell Record

Inmate Name: Angela Hulsey                          Cell: 3

Date/Time Placed in Cell: _____ Placed in Cell by: _____

Basis for Placement (circle) (Medical Observation) Detoxification   Suicide Precautions

Officer Notified: _____ Date and Time: 10-10-16

Observation Frequency: 1 hour

## Monitoring Log

Activity Codes: 1=Check, 2=Yelling, 3=Crying, 4=Sleeping, 5=Quiet, 6=Relaxed, 7=Walking,
8=Sitting, 9=Fluids accepted, 10=Fluids refused, 11=Meal accepted, 12=Meal rejected,
13=Shower, 14=Toilet, 15=Nurse visit, 16=Range of motion, 17=Doctor visit

| Date | Time | Activity | Initials | Date | Time | Activity | Initials | Date | Time | Activity | Initials |
|------|------|----------|----------|------|------|----------|----------|------|------|----------|----------|
| 10-10 | 2200 | 1, 4 | RK |  |  |  |  |  |  |  |  |
| 10-10 | 2300 | 1, 4 | RK |  |  |  |  |  |  |  |  |
| 10-10 | 2359 | 1, 4 | RK |  |  |  |  |  |  |  |  |
| 10-11 | 0002 | 1, 4 | RK |  |  |  |  |  |  |  |  |
| 10-11 | 0107 | 1, 4 | RK |  |  |  |  |  |  |  |  |
| 10-11 | 0202 | 1, 4 | RK |  |  |  |  |  |  |  |  |
| 10-11 | 0328 | 1, 4 | RK |  |  |  |  |  |  |  |  |
| 10-11 | 0405 | 1, 4 | RK |  |  |  |  |  |  |  |  |
| 10-11 | 0465 | 1, 4 | RK |  |  |  |  |  |  |  |  |
| 10-11 | 0507 | 1, 4 | RK |  |  |  |  |  |  |  |  |
| 10-11 | 0540 | 1, 4 | JES |  |  |  |  |  |  |  |  |

Date/Time Returned to General Population: _____ Approved by: _____

# Observation Cell Record

Inmate Name: _Hulsey, Angela_     Cell: **#3**

Date/Time Placed in Cell _10-11-16 @ 2150_    Placed in Cell by: _____

Basis for Placement (circle) (Medical Observation) Detoxification   Suicide Precautions

Officer Notified:_____    Date and Time:_____

Observation Frequency: _1 hour_

| Monitoring Log |
| --- |
| Activity Codes: 1=Check, 2=Yelling, 3=Crying, 4=Sleeping, 5=Quiet, 6=Relaxed, 7=Walking, 8=Sitting, 9=Fluids accepted, 10=Fluids refused, 11=Meal accepted, 12=Meal rejected, 13=Shower, 14=Toilet, 15=Nurse visit, 16=Range of motion, 17=Doctor visit |

| Date | Time | Activity | Initials | Date | Time | Activity | Initials | Date | Time | Activity | Initials |
|------|------|----------|----------|------|------|----------|----------|------|------|----------|----------|
| 10-11 | 2150 | 1, 3 | WS | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Date/Time Returned to General Population: _____   Approved by:_____

# Observation Cell Record

Inmate Name: __Angela Hulsey__     Cell: __#3__

Date/Time Placed in Cell _____ Placed in Cell by: __Nurse Jessica__

Basis for Placement (circle)  Medical Observation  Detoxification  Suicide Precautions

Officer Notified:_____ Date and Time:_____

Observation Frequency: __1 hour__

## Monitoring Log

Activity Codes: 1=Check, 2=Yelling, 3=Crying, 4=Sleeping, 5=Quiet, 6=Relaxed, 7=Walking, 8=Sitting, 9=Fluids accepted, 10=Fluids refused, 11=Meal accepted, 12=Meal rejected, 13=Shower, 14=Toilet, 15=Nurse visit, 16=Range of motion, 17=Doctor visit

| Date | Time | Activity | Initials | Date | Time | Activity | Initials | Date | Time | Activity | Initials |
|------|------|----------|----------|------|------|----------|----------|------|------|----------|----------|
| 10/11 | 2200 | 1,5,6 | cw |  |  |  |  |  |  |  |  |
| 10/11 | 2300 | 1,5,6 | ec |  |  |  |  |  |  |  |  |
| 10/12 | 0001 | 1,5,6 | ec |  |  |  |  |  |  |  |  |
| 10/12 | 0100 | 1,5,6 | cw |  |  |  |  |  |  |  |  |
| 10/12 | 0200 | 1,5,6 | ec |  |  |  |  |  |  |  |  |
| 10/12 | 0301 | 1,5,6 | ec |  |  |  |  |  |  |  |  |
| 10/12 | 0409 | 1,5,14,8 | a |  |  |  |  |  |  |  |  |
| 10/12 | 0510 | 1,5,6,9 | ec |  |  |  |  |  |  |  |  |
|  |  | 5,7,1 |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |

Date/Time Returned to General Population: _____ Approved by:_____

# Observation Cell Record

Inmate Name: __Angela Hulsey__    Cell: __#3__

Date/Time Placed in Cell _____  Placed in Cell by: __Nurse Jessica__

Basis for Placement (circle)   Medical Observation   Detoxification   Suicide Precautions

Officer Notified: _____    Date and Time: _____

Observation Frequency: __1 hour__

| Monitoring Log | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Activity Codes: 1=Check, 2=Yelling, 3=Crying, 4=Sleeping, 5=Quiet, 6=Relaxed, 7=Walking, 8=Sitting, 9=Fluids accepted, 10=Fluids refused, 11=Meal accepted, 12=Meal rejected, 13=Shower, 14=Toilet, 15=Nurse visit, 16=Range of motion, 17=Doctor visit** | | | | | | | | | | | |
| Date | Time | Activity | Initials | Date | Time | Activity | Initials | Date | Time | Activity | Initials |
| 10/11 | 2200 | 1,5,6 | CW | | | | | | | | |
| 10/11 | 2300 | 1,5,6 | CW | | | | | | | | |
| 10/12 | 0001 | 1,5,6 | CW | | | | | | | | |
| 10/12 | 0100 | 1,5,6 | CW | | | | | | | | |
| 10/12 | 0200 | 1,5,6 | CW | | | | | | | | |
| 10/12 | 0301 | 1,5,6 | CW | | | | | | | | |
| 10/12 | 0409 | 1,5,14 | a | | | | | | | | |
| 10/12 | 0510 | 1,5,14 | CW | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Date/Time Returned to General Population: _____  Approved by: _____

# Observation Cell Record

Inmate Name: Angela Hulsey                     Cell: _____

Date/Time Placed in Cell _____ Placed in Cell by: _____

Basis for Placement (circle)  (Medical Observation)  Detoxification  Suicide Precautions

Officer Notified:_____ Date and Time:_____

Observation Frequency: 1 hour

| Monitoring Log | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Activity Codes: 1=Check, 2=Yelling, 3=Crying, 4=Sleeping, 5=Quiet, 6=Relaxed, 7=Walking, 8=Sitting, 9=Fluids accepted, 10=Fluids refused, 11=Meal accepted, 12=Meal rejected, 13=Shower, 14=Toilet, 15=Nurse visit, 16=Range of motion, 17=Doctor visit | | | | | | | | | | | |
| Date | Time | Activity | Initials | Date | Time | Activity | Initials | Date | Time | Activity | Initials |
| 10-12 | 0600 | 1,5 | TSR | | | | | | | | |
| 10-12 | 0652 | 1,5 | DV | | | | | | | | |
| 10-12 | 0820 | 1,8 | C | | | | | | | | |
| 10-12 | 0910 | 1,8 | Z | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Date/Time Returned to General Population: _____ Approved by:_____

# Cheatham County Sheriff's Office

| Date | Day | Time | Location | Nature of Incident | Reporting Officer |
|------|-----|------|----------|--------------------|--------------------|
| 10/12/2016 | WEDNESDAY | 0911 | BOOKING/ CELL 3 | MEDICAL | CPL. BEN MOORE |

**Inmates Involved:**

ANGELA HULSEY

**Officers Involved:**

MOORE, GIZZI-BELL, HEBERT

### Narrative

INMATE HULSEY COMPLAINED EARLIER IN THE SHIFT THAT SHE WAS HAVING DIFFICULTIES BREATHING AND HER RIGHT SIDE WAS HURTING AND WAS VISIBLY SHAKING. I HELPED HER OUT OF THE CELL AND GAVE HER A CHAIR TO SIT IN AT THE BOOKING COUNTER. I NOTIFIED THE NURSE AT 0816 HRS, INMATE HULSEY'S BLOOD PRESSURE WAS TAKEN AND READ 110/60 PULSE 92 02 97. THE NURSE GAVE HULSEY 2 TYLENOL AND SHE WAS GIVEN A SHOWER BECAUE SHE HAD AN ACCIDENT IN HER UNIFORM. AFTER HER SHOWER SHE WAS PLACED BACK IN CELL 3 AWAITING TO SEE THE NURSE AND APPEARED TO BE FEELING BETTER.  I WAS ALERTED BY OTHER INMATES IN CELL 3 AROUND 0911 HOURS THAT HULSEY WAS DROOLING AND WOULD NOT REPOND. MYSELF AND THE NURSE RESPONDED TO THE CELL AND MADE CONTACT WITH INMATE HULSEY, SHE WAS  DROOLING AT THE MOUTH AND WAS NOT RESPONDING VERBALLY. I GRABBED AN AMMONIA INHALANT FROM THE OFFICE AND THE NURSE POPPED IT AND PLACED IT UNDER HULSEY'S NOSE, SHE DID NOT RESPOND TO THE AMMONIA. I GRABBED THE O2 METER FOR THE NURSE, AFTER THE 02 READING THE NURSE INSTRUCTED ME TO CALL EMS AND THE NURSE BEGAN CPR. I CALLED EMS AT 0912 HOURS AND THEY ARRIVED AT 0915 HOURS. AT 0920 INMATE HULSEY WAS LOADED UP AND TAKEN OUT OF THE JAIL BY EMS AND AT 0923 WAS TRANPORTED BY AMBULANCE TO SKYLINE MEDICAL IN NASHVILLE, DEPUTY HEBERT FOLLOWED. E.O.R.

**Action Taken:**

REPORT WRITTEN

| Officer Signature | Supervisor Signature | Date / Time Received |
|-------------------|----------------------|----------------------|

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 41 of 62 PageID #: 794

REV. 02/23/16 (1/1)

Report for: Angela Hulsey DOB[redacted]82                    October 12, 2016

Apx: 8:30 Called to side of inmate: who was sitting at the booking counter handcuffed to bar. Inmate reported not feeling well, and breathing heavily, V/S were taken B/P 110/60, P 92, O2 97, R 18, IM reassured, and explained to slow her breathing that this would make her feel worse. Asked IM if she had eaten today, she stated she could not eat as it was "going right through her" reminded IM that she must encourage herself to drink and eat as she can, as this was very important in making he feel better. To which IM did attempt to calm self. Asked IM again if she had been using any drugs prior to coming in, and now states that she had used Heroin and fentanyl. She asked for Tylenol for head and discomfort, Two 325 mg Tylenol given. At this time it was also noted that IM had a bowel movement on self, (See notes on Monday the 10th concerning ongoing issue with bowels) Explained to IM that I would have CO come and assist her with shower, and provided IM with Two Pull up style under garments, (one for after shower and one for later if needed.) Re-requested Booking sheet for IM of Corporal Moore, to follow up with Intake to get better idea of what is happening with IM. And advised IM will do Intake after she has completed shower.


It was noted that IM did participate in shower with CO to clean up and placed on undergarment.


Apx: 9:10 am Corporal Moore to cell 3 to "let IM Hulsey know to get ready for court" I did hear Corporal Moore call for her more than once, and I got up to see what was happening due to his repeated requests for her attention.


Upon entering cell, IM was sitting up, with legs crossed underneath her, with both hands between legs. She was noted to be drooling with head to the left, but was breathing. When spoken to she would blink eyes, but not verbally responsive. Requested gloves and ammonia capsule and pulse OX, to which she was non responsive to ammonia capsule. IM was then laid down on Left side being careful of her head as she was very close to the wall, after laying IM on side, It was noted that her Finger tips were cyanotic, did attempt pulse Ox but no reading noted, at this time, breathing attempts were noted to a agonal, pulse present but weak, therefore, Called corporal for EMS, and started CPR, AED was not obtained by CO as Ambu bag was otained first and brought to cell, and EMS response was VERY quick (called 9:12 / In building and room at 9:15) CPR preformed as per policy, alternating with Rescue Breathing and Compressions. With use of Ambu Bag. Upon EMS arrival, they took over CPR, and used their AED, which advised NO Shock Needed (X2), and to continue CPR. At this time there appeared to be no change in IM condition. EMS loaded IM to stretcher and applied an "automatic CPR" Belt style equipment to IM. She was loaded in ambulance at 9:23 am and taken to Local Hospital. At the time of writing of this report, I have been told per Corporal that reported to him that she was being transferred from Local Hospital (CMC Ashland City) that she is stable, and is being transferred to Skyline hospital in Nashville.

*Jessica [signature]*

# CAD Operations Report

**CHEATHAM COUNTY E911**

Call Number     161012-0038

Printed:     11/16/2017 08 41 AM

## Call Detail Information   Jurisdiction:     CHEATHAM

| Call Number 161012-0038 | Taker SMPICKARD | Pos 4 | Call Owner | Status C | Date - Time Received Wed 10 /12/2016 09 14 12 | | Inj 0 |

| Complaint | Ten Code | Priority | Fire Grade | Class | Alarm | How Received |
|---|---|---|---|---|---|---|
| SICK-UNKNOWN | MED | 1 | | E | | |

| Incident Location | Apart/Suite | Floor/Bldg | Incident City | State | ZIP |
|---|---|---|---|---|---|
| 100 PUBLIC SQ | | | ASHLAND CITY | TN | 37015 |

| Caller Name | Telephone | Alt Telephone | Tower ID |
|---|---|---|---|
| BOOKING | 615-792-2025 | | . . |

| Caller Location | Apart/Suite | Floor/Bldg | Caller City | State | ZIP |
|---|---|---|---|---|---|
| 100 PUBLIC SQ | | | ASHLAND CITY | TN | 37015 |

| Landmark | Weapons |
|---|---|
| BOOKING | |

| IRA 135 | Grid | Disp Zone | Fire Run Zn | EMS Run Zn | ESN 135 | Tract AC |

| ☒ Contacts | ☐ Fire Plan | ☐ Hazard | ☐ Images | ☐ Medical | ☐ Traffic | ☑ Previous |
|---|---|---|---|---|---|---|
| ☐ BOLO | ☐ Warrant | RMS CH | RMS Alerts | ☐ In Progress | ☐ Report Req | ☐ Subject Req |

| ALI Time | Call Rec'd 09 14 12 | Xmit 09 15 15 | Dispatch 09 15 33 | Enroute 09 16 51 | OnScene 09 16 51 | Departed 9 34 49AM | Arrived 09 54 45 | Comp 11 46 37 | Unit 100 |

| X: | Y: | Z: | Lwr: SYCAMORE ST | Upr: FREY ST |

Narrative. .

[10/12/2016 09 15 15 pos4 SMPICKARD]
Cross streets SYCAMORE ST//FREY ST
Landmark BOOKING
33 YOF // NOT RESPONDING VERY WELL//DROOLING//COMING OFF DRUGS//DECRESAED LOC

[10/12/2016 09 18 02 pos4 SMPICKARD]
CPR IN PROGRESS

[10/12/2016 09 20 26 pos4 SMPICKARD]
900 ADVISED

[10/12/2016 09 21 36 pos4 SMPICKARD]
TIM AT ER NOTIFIED

[10/12/2016 9 26 40 AM pos1 LLANE]
122902 ARE JAIL2 MILES // THEY ARE GOING TO FOLLOW MED UNIT WHEN THEY TRANSPORT //

[10/12/2016 10 46 49 pos4 SMPICKARD]
TIMES SENT TO EMS1
Location Comment

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 43 of 62 PageID #: 0796



Cheatham County Sheriff's Office
Detention Facility Policy and Procedure and
Standard Operating Procedure

POLICY 1400-1-13
MEDICAL SERVICES

DATE OF ACTION: January 1, 2015
AUTHORIZING OFFICIAL:

_Lt. J.J. Hand_

1400-1-13.01  SICK CALLS

1400-1-13.02  DENTAL SERVICES

1400-1-13.03  EMERGENCY MEDICAL PROCEDURES

1400-1-13.04  HEALTH SEGREGATION

1400-1-13.05  MENTAL HEALTH PROBLEMS

1400-1-13.06  SUICIDE IDENTIFICATION AND
PREVENTION

1400-1-13.07  INTOXICATED INMATES

1400-1-13.08  MEDICATION

95



Cheatham County Sheriff's Office
Detention Facility Policy and Procedure and
Standard Operating Procedure

POLICY 1400-1-13.01
SICK CALLS

DATE OF ACTION:  January 1, 2015
AUTHORIZING OFFICIAL:

Lt. J.L. Hart

Sick call will be conducted daily. All inmates will be given the opportunity to be seen by the doctor or nurse if required. All incoming inmates will be advised of the proper procedure for obtaining medical call upon their admission to this facility.

PROCEDURES: SICK CALL

1.  To receive medical attention, an inmate must notify the facility nurse on the commissary system kiosk stating the reason he/she needs medical attention.

2.  The inmate will fill out a medical request slip if attention is needed.

3.  Correctional officers will not forward any medical request slips. The inmates will have them completed on the commissary system kiosk.  If they are experiencing problems with the kiosk they are to write a written request to the facility nurse.

4.  The inmate is responsible for making sure their request for medical services slips are forwarded to the medical authority.

5.  The nurse or doctor will respond to each request slip submitted by scheduling an appointment with the doctor or taking any other appropriate action.

96



Cheatham County Sheriff's Office
Detention Facility Policy and Procedure and
Standard Operating Procedure

POLICY 1400-1-13.03
EMERGENCY MEDICAL PROCEDURES

DATE OF ACTION: January 1, 2015
AUTHORIZING OFFICIAL:

1. Corrections personnel will be aware that an emergency medical situation can occur at any time.
2. When a staff person discovers an inmate or staff member who is in need of emergency medical attention, he/she will apply first aid immediately. A first aid kit is found in the control center and in the booking office.
3. Once first aid has been applied, at the earliest opportunity the correction officer shall notify the control center as follows:
   A. Of an emergency medical situation, the condition of the patient, and location
   B. To send help, if necessary
   C. To contact the nurse
   D. In the event of serve trauma and it is immediately noticeable that transporting will be necessary, the reporting correctional officer shall request that the communication center call for an ambulance.

4. The control officer will direct duty personnel to assist the reporting staff member with the emergency.

98



Cheatham County Sheriff's Office
Detention Facility Policy and Procedure and
Standard Operating Procedure

POLICY 1400-1-13.04
HEALTH SEGREGATION

DATE OF ACTION: January 1, 2015
AUTHORIZING OFFICIAL:

Lt. J.J. Hand

Inmates suffering from communicable diseases and those who are sick but do not require hospitalization shall be housed separate from the other prisoners.

DEFINITION: HEALTH SEGREGATION:
A form of administrative segregation used to separate inmates suffering from communicable diseases from the rest of the population.

RESOLUTION: 8

RESOLUTION TITLE: To Give An Approval For The County Mayor's Signature On The Agreement For The Provision Of Inmate/Detainee Health Services

DATE: October 20, 2014

MOTION BY: Mr. Gary Binkley

SECONDED BY: Mr. Tim Williamson

COMPLETED RESOLUTION:

BE IT THEREFORE RESOLVED, That the Cheatham County Legislative Body meeting in Regular Session this the 20th day of October, 2014 in the General Sessions Courtroom at the Courthouse in Ashland City, Tennessee, WHEREAS, the County Mayor's signature on the Agreement for the Provision of Inmate/Detainee Health Services is approved.

*Copy of Agreement is attached.*

RECORD: Approved by voice vote.

| | |
|---|---|
| Betty Ramsey | Donnie Jordan |
| Gary Binkley | Walter Weakley |
| Ann Jarreau | Diana Pike |
| Tim Williamson | Eugene O. Evans, Sr. |
| Dale McCarver | Shanon Pickard |
| Connie Mayo | Jimmy Hedgepath |

CHEATHAM COUNTY MAYOR'S REMARKS:

David McCullough, County Mayor

CHEATHAM COUNTY CLERK'S ACKNOWLEDGMENT:_____

I, Teresa Gupton, do hereby certify that I am the duly authorized and acting County Clerk of Cheatham County, Tennessee. And as such official, I further certify that this resolution was duly passed in open court and offered for signature to the Honorable David McCullough, County Mayor; that this resolution was promptly and fully recorded and is open to public inspection

Witness, My official signature and seal of said county, this 24th day October of 2014.

_____
Teresa Gupton, County Clerk

CHEATHAM COUNTY CLERK
SEAL
ORGANIZED MAY 1856

CHEATHAM COUNTY
MAYOR'S OFFICE

OCT 2 7 2014

RECEIVED

## AGREEMENT FOR THE PROVISION OF INMATE/DETAINEE HEALTH SERVICES
## CHEATHAM COUNTY, TENNESSEE

This **AGREEMENT FOR THE PROVISION OF INMATE/DETAINEE HEALTH SERVICES** (hereinafter referred to as the "AGREEMENT") is hereby entered into by and between **CHEATHAM COUNTY, TENNESSEE**, a political subdivision of the State of Tennessee (hereinafter referred to as the "COUNTY"); and **QCHC, INC.** a/k/a Quality Correctional Health Care, an Alabama Corporation (hereinafter referred to as "QCHC").

## RECITALS

**WHEREAS,** the COUNTY desires to provide professional and responsive healthcare services to the INMATES/DETAINEES of the Cheatham County Jail located in Ashland City (hereinafter referred to as the "JAIL");

**WHEREAS,** QCHC is a corporation which provides professional and responsive healthcare services in incarceration facilities and desires to provide such services for the COUNTY under the terms of this AGREEMENT; and

**WHEREAS,** the COUNTY desires to enter into this AGREEMENT with QCHC;

**NOW THEREFORE,** the parties enter into this AGREEMENT as hereinafter set forth.

## DEFINITIONS

**QCHC CORPORATE HOLIDAYS** – New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day.

**INMATES/DETAINEES** – INMATES/DETAINEES booked into the custody of the SHERIFF of Cheatham County and incarcerated in the JAIL.

**ELECTIVE CARE** – Care which, if not provided, would not, in the opinion of QCHC's physician, who shall be a physician licensed in the State of Tennessee and an employee or independent contractor of QCHC, cause the INMATE/DETAINEE's health to deteriorate, or cause harm to the INMATE/DETAINEE's well-being.

**MID-LEVEL PRACTITIONER** – An advanced registered nurse practitioner or physician assistant who has completed an advanced training program. A MID-LEVEL PRACTITIONER will be duly licensed to practice medicine in Tennessee.

**SHERIFF** – The SHERIFF of Cheatham County, or his agent or designee, such as the Jail Commander/Administrator, Chief Deputy, Chief of Staff, Under-sheriff, Acting Sheriff, etc.

**SPECIALTY SERVICES** – Medical services that require a physician to be board-certified in a specialty, including, but not limited to, cardiology, dermatology, gynecology, and neurology.

## ARTICLE I:
## DUTIES AND OBLIGATIONS OF QCHC

For and in consideration of the compensation to be paid to QCHC as hereinafter set forth, the sufficiency of which is mutually acknowledged by the parties to this AGREEMENT, QCHC agrees as follows:

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 50 of 62 PageID #: 2803

1.1. **STAFFING.** QCHC will provide the staffing coverage necessary for the rendering of healthcare services to the INMATES/DETAINEES of the JAIL as described herein. It is understood and agreed that QCHC employees are allowed to leave the JAIL during the work day for meal breaks, provided the timing and length of such leave does not negatively impact or impair QCHC'S ability to fulfill its obligations under this AGREEMENT. The minimum service requirements include:

1.1.1. **PHYSICIAN.** A physician will visit the JAIL one day per week for a period of time sufficient to accomplish the objectives of this AGREEMENT, with the schedule of such physician visits to be determined between the SHERIFF and QCHC. During such physician visits to the JAIL, the physician will stay until all work is completed. The physician will be available by telephone to the JAIL and medical staff on an on-call basis, seven (7) days per week, twenty-four (24) hours per day. For scheduled visits that fall on QCHC CORPORATE HOLIDAYS, coverage may be provided by phone only. QCHC may substitute physician visits with visits by a MID-LEVEL PRACTITIONER, if appropriate and prudent in the medical opinion of QCHC's physician.

1.1.2. **NURSING.** QCHC will provide on-site nursing coverage at the JAIL to include Forty (40) hours per week. This number of hours is designed to support the average daily population (ADP) contained in Article 3 of this AGREEMENT, and QCHC believes that this number of hours allows it to achieve the objectives of this AGREEMENT based on that ADP. The SHERIFF and QCHC agree to review nursing hours should the ADP significantly exceed the level contained in Article 3 of this AGREEMENT. The nurse will be available by telephone to the JAIL staff on an on-call basis, seven (7) days per week, twenty-four (24) hours per day.

1.2. **CARE REPORTS.** QCHC will review, at the scheduled Continuing Quality Improvement (CQI) meetings with the SHERIFF or designee, the healthcare reports concerning the overall operation of the healthcare services program and the general health of the INMATES/DETAINEES of the JAIL.

1.3. **DENTAL CARE.** QCHC will provide for INMATES/DETAINEES dental triage screenings in accordance with criteria established by a licensed dentist for the purpose of identifying INMATES/DETAINEES in need of dental services from a licensed dentist. COUNTY will be responsible for providing the dentist and will be financially responsible for the dentist's services.

1.4. **DISPOSABLE MEDICAL SUPPLIES.** QCHC will provide for INMATES/DETAINEES disposable medical supplies intended for one-time use.

1.5. **DURABLE MEDICAL EQUIPMENT AND SUPPLIES.** QCHC will be financially responsible for the costs of durable medical equipment and supplies with per unit costs of less than Five Hundred Dollars ($500.00). The SHERIFF and the COUNTY will not be liable for loss of or damage to medical equipment and supplies of QCHC, its agents, employees or subcontractors, unless such loss or damage was caused by the sole negligence of the SHERIFF's employees.

1.6. **ELECTIVE CARE.** QCHC will not provide ELECTIVE CARE to INMATES/DETAINEES. Decisions concerning ELECTIVE CARE will be consistent with the applicable American Medical Association (AMA) standards.

1.7. **EMERGENCY CARE.** QCHC will provide emergency medical treatment to staff of the JAIL, subcontractors and visitors who become ill or are injured while on the premises. QCHC

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 51 of 62 PageID #: 2804

will stabilize all patients and refer for recommended off-site emergency treatment or care, as needed.

**1.8.** **HEALTH EDUCATION.** QCHC will provide health education materials to the SHERIFF for INMATE/DETAINEE education. QCHC will also provide annual CPR/first aid and other training for staff of the JAIL, as determined by the SHERIFF and QCHC.

**1.9.** **HEALTH EVALUATIONS.** QCHC will provide for INMATES/DETAINEES on-site health evaluations and medical care within the National Commission on Correctional Health Care (NCCHC) and Tennessee Corrections Institute (TCI) guidelines.

**1.10.** **INFANT CARE.** QCHC will neither arrange for infant care nor be financially responsible for any costs associated with infant care.

**1.11.** **INMATE/DETAINEE LABOR.** INMATES/DETAINEES will not be employed or otherwise engaged or utilized by either QCHC or the SHERIFF in the direct rendering of any healthcare services.

**1.12.** **MANAGEMENT SERVICES.** QCHC will provide management services to include: a comprehensive Strategic Plan; Policies and Procedures; Protocols; Peer Review; CQI; Cost Containment; Utilization Management; Risk Management programs; and Health Insurance Portability and Accountability Act (HIPAA) and NCCHC and TCI Compliance programs specific to the medical operations of the JAIL.

**1.13.** **MEDICAL RECORDS.** QCHC will maintain, cause, or require being maintained, at its own cost, complete and accurate medical records for each INMATE/DETAINEE who has received healthcare services. Each medical record will be maintained in accordance with applicable laws, TCI Standards, and the SHERIFF's policies and procedures. The medical records will be kept separate from the INMATE/DETAINEE's confinement record. A complete copy of the original applicable medical record will be available to accompany each INMATE/DETAINEE who is transferred from the JAIL to another location for off-site services or transferred to another institution. Medical records will be kept confidential, subject to applicable laws regarding confidentiality of such records. QCHC will comply with state and federal law and the SHERIFF's policy with regard to access by INMATES/DETAINEES and staff of the JAIL to medical records. No information contained in the medical records will be released by QCHC except as provided by the SHERIFF's policy, a court order, or otherwise in accordance with applicable laws. At the expiration of this AGREEMENT period, all medical records will be delivered to and remain with the SHERIFF/COUNTY/JAIL. However, the COUNTY will provide QCHC with reasonable ongoing access to all medical records, even after the expiration of this AGREEMENT, for the purpose of defending litigation. INMATE/DETAINEE medical records will at all times be the property of the COUNTY/SHERIFF/JAIL. QCHC will make available to the SHERIFF, unless otherwise specifically prohibited, at the SHERIFF's request, all records, documents, and other papers relating to the direct delivery of healthcare services to JAIL INMATES/DETAINEES hereunder.

**1.14.** **MEDICAL WASTE REMOVAL.** QCHC will be responsible for medical waste removal services at the JAIL consistent with all applicable laws.

**1.15.** **MEETINGS.** QCHC representatives will meet, in accordance with a schedule agreed to by the SHERIFF and QCHC, with the SHERIFF or designee concerning procedures within the

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 52 of 62 PageID #: 2805

JAIL, any proposed changes in health-related procedures, or other matters which either party deems necessary.

1.16. **OFFICE SUPPLIES.** QCHC will be responsible for providing office supplies, which may include paper, pens, charts, folders, staplers, and calendars. QCHC will have access to, and use of, desks, chairs, refrigerators, lamps, machinery, fax machines, computers, or printers that are located in the JAIL healthcare unit at the beginning of the term of this AGREEMENT.

    1.16.1. The SHERIFF and the COUNTY will not be liable for loss of or damage to office equipment and supplies of QCHC, its agents, employees or subcontractors, unless such loss or damage was caused by the sole negligence of the SHERIFF's employees.

1.17. **OFF-SITE AND/OR SPECIALTY SERVICES.** When off-site and/or hospital care is required for medical reasons, QCHC will arrange for inpatient and/or outpatient hospital services, mobile services, SPECIALTY SERVICES, dental care, X-ray, diagnostic testing, consultation services, off-site mental health services, and medically indicated ground ambulance transportation for INMATES/DETAINEES, in accordance with the SHERIFF's policies and procedures. QCHC will not be financially responsible for any costs associated with off-site care and/or SPECIALTY SERVICES. QCHC will use its best efforts to provide COUNTY access to a physician specialty/off-site provider network through which COUNTY may obtain a reduction in the standard fees of the covered off-site services and specialists.

    1.17.1. **MOBILE X-RAY.** Notwithstanding the foregoing Section 1.17, QCHC will provide, as part of the healthcare services under this AGREEMENT, a mobile x-ray unit that will provide mobile x-ray and radiology services for the INMATES/DETAINEES, except in cases of emergency when an INMATE/DETAINEE must, in the opinion of QCHC's physician, be sent off-site for immediate x-ray or radiology services.

1.18. **CHRONIC CARE CLINICS.** QCHC will establish a plan for the identification, treatment and monitoring of INMATES/DETAINEES with chronic illnesses and special healthcare needs. QCHC will be required to continue "chronic care clinics" for those INMATES/DETAINEES identified with specified chronic illnesses and conditions (diabetes, hypertension, mental illness, HIV/AIDS, tuberculosis, asthma, seizures, etc.). QCHC has defined a chronic health problem as an illness which is either ongoing or recurring. To provide an effective and efficient healthcare delivery system for chronically ill patients, QCHC identifies the number of INMATES/DETAINEES with specific chronic conditions, and individual treatment plans are developed or reviewed for each of these INMATES/DETAINEES which includes: instructions regarding medications; the type and frequency of laboratory; other diagnostic testing; frequencies of follow up for reevaluation of the INMATE/DETAINEE's condition; and adjustment of the treatment plan as needed. Chronic care clinics are established to enable INMATES/DETAINEES to have scheduled visits to QCHC independent of any sick call requests.

1.19. **ON-SITE and OFF-SITE TESTING.** QCHC will provide for INMATE/DETAINEES on-site laboratory testing, which shall include, but not be limited to, finger-stick blood sugar and urine dipstick for pregnancy and/or infection. QCHC will also provide TB skin tests for INMATES/DETAINEES as directed by the SHERIFF.

1.20. **OPTICAL CARE.** QCHC will not be financially responsible for the provision or costs of optical care, eyeglasses, and/or optical supplies.

1.21.  **OTHER EXPENSES.** QCHC will neither be responsible for the performance nor payment of any services which are not specifically contained in this AGREEMENT.

1.22.  **PHARMACEUTICALS.** QCHC will provide pharmaceutical management, distribution, and policies, and be financially responsible for all formulary medications. QCHC shall not be responsible for the cost of any non-formulary medications. For the purpose of this paragraph, non-formulary medications shall mean: medications to treat diseases or complications of HIV/AIDS, Hepatitis, Cystic Fibrosis, Multiple Sclerosis, or Cancer, pharmaceuticals listed as Biologicals and Anti-Rejection drugs (as defined in the Physician Desk Reference), and Atypical Psychotropic medications.

1.23.  **PHYSICAL EXAMINATIONS FOR INMATE WORKERS.** QCHC will provide basic physical examinations for potential INMATE workers to ensure the INMATES are physically capable of performing assigned work duties.

1.24.  **PROSTHETICS.** QCHC will not be financially responsible for the costs of prosthetics and/or prosthetic supplies.

1.25.  **INMATES/DETAINEES.** The health care services contracted in the AGREEMENT are intended only for those INMATES/DETAINEES in the actual physical custody of the JAIL, after being medically stabilized and committed to the Jail. No other person(s) shall be the financial responsibility of QCHC. INMATES/DETAINEES, for example, on any sort of temporary release or escape, including, but not limited to those temporarily released for the purpose of attending funerals or other family emergencies, those on escape status, those on pass, parole or supervised custody who do not sleep in the JAIL at night, shall not be included in the daily population count, and shall not be the responsibility of QCHC with respect to the payment or the furnishing of their health care services. Persons in the physical custody of other police or other penal jurisdictions at the request of COUNTY are likewise excluded from the population count and are not the responsibility of QCHC for the furnishing or payment of health care services. Medical care rendered within the JAIL to inmates/detainees from jurisdictions other than COUNTY, and housed in the JAIL pursuant to agreements between COUNTY and such other jurisdictions, or by statute, will be the responsibility of QCHC, to the same extent as INMATES/DETAINEES of the COUNTY; however, medical care that cannot be rendered within the JAIL will be arranged by QCHC, but QCHC shall have no financial responsibility for such services to those prisoners.

1.26.  **SHERIFF'S POLICIES AND PROCEDURES.** QCHC will operate within the requirements of the SHERIFF's policies and procedures which are directly related to the provision of medical services, as well as other policies and procedures of the SHERIFF which may impact the provision of medical services, including policies and procedures related to the security of the JAIL. Such policies and procedures may change from time to time; if so, QCHC will be promptly notified and will operate within all policies, procedures and modifications thereof.

**ARTICLE 2:**
**DUTIES AND OBLIGATIONS OF THE SHERIFF**

2.1.  **INMATE/DETAINEE INFORMATION.** The SHERIFF will provide, as needed, information pertaining to INMATES/DETAINEES that QCHC and the SHERIFF mutually identify as reasonable and necessary for QCHC to adequately perform its obligations to the SHERIFF and the COUNTY.

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 54 of 62 PageID #: 807

2.2. **OFFICE EQUIPMENT AND SUPPLIES.** The SHERIFF will provide use of SHERIFF or COUNTY-owned office equipment and all necessary utilities, excluding all costs of long distance telephone service, in place at the JAIL healthcare units. Upon termination of this AGREEMENT, QCHC will return to the SHERIFF possession and control of all SHERIFF or COUNTY-owned office equipment. At such time, the office equipment and supplies will be in good working order, with allowances made for reasonable wear and tear.

2.3. **RECORD AVAILABILITY.** During this AGREEMENT term, and for a reasonable time thereafter, the SHERIFF will provide QCHC, at QCHC's request, the SHERIFF's records relating to the provision of healthcare services to INMATES/DETAINEES as may be reasonably requested by QCHC in connection with an investigation of, or defense of, any claim by a third party related to QCHC's conduct. As QCHC may reasonably request, and consistent with applicable state and federal laws and the foregoing provision, the SHERIFF will make available to QCHC such records as are maintained by the SHERIFF, hospitals, and other off-site healthcare providers involved in the care or treatment of INMATES/DETAINEES (to the extent the SHERIFF has any control over those records). Any such information provided by the SHERIFF to QCHC that the SHERIFF considers confidential will be kept confidential by QCHC and shall not, except as may be required by law, be distributed to any third party without the prior written approval of the SHERIFF. Notwithstanding any provision of this AGREEMENT to the contrary, the SHERIFF's internal affairs investigative records will not be required to be provided to QCHC or any other person or entity (except as may be required by law).

2.4. **SECURITY.** The SHERIFF will maintain responsibility for the physical security of the JAIL and the continuing security of the INMATES/DETAINEES. QCHC and the SHERIFF understand that adequate security services are necessary for the safety of the agents, employees, and subcontractors of QCHC, as well as for the security of INMATES/DETAINEES and staff of the JAIL, consistent with the correctional setting. The SHERIFF will provide security sufficient to enable QCHC and its personnel to safely provide the healthcare services described in this AGREEMENT. The SHERIFF will screen QCHC's proposed staff to ensure that they will not constitute a security risk. The SHERIFF will have final approval of QCHC's employees in regards to security/background clearance and access to the JAIL.

## ARTICLE 3:
## COMPENSATION/ADJUSTMENTS

3.1. **ANNUAL AMOUNT/MONTHLY PAYMENTS.** The annualized amount to be paid by the COUNTY to QCHC under this AGREEMENT is to be ONE HUNDRED THIRTEEN THOUSAND ONE HUNDRED EIGHTY DOLLARS AND THIRTY-TWO CENTS ($113,180.32). The COUNTY will make monthly payments of ($9,431.69), which is equal to 1/12 of the annualized amount. QCHC will bill the COUNTY approximately two (2) weeks prior to the month in which services are to be rendered. The COUNTY agrees to pay QCHC prior to the tenth (10th) day of the month in which services are rendered. Payments received after the tenth (10th) day of the month in which services are rendered are subject to a late penalty not to exceed 10% of the monthly payment amount.

3.2. **INCREASES IN ADP.** This AGREEMENT is based upon the assumption that the JAIL will have an ADP of 130 INMATES/DETAINEES total. If the total ADP of the JAIL significantly exceed 130 for a consecutive three-month period, the parties agree to enter into negotiations in good faith for additional compensation.

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 55 of 62 PageID #: 2808

## ARTICLE 4:
## TERM AND TERMINATION

**4.1.** **TERM.** The term of this AGREEMENT will be for the three (3) years from October 1, 2014 at 12:01 A.M. through September 30, 2017 at 11:59 P.M.

**4.2.** **ANNUAL RENEWALS.** At the end of the above-stated three (3) year term, this AGREEMENT will be renewable for successive one (1) year terms, if the parties mutually agree in writing to such renewals. QCHC reserves the right to request inflation-based increases in the annual price upon such renewals, at the rate of the Consumer Price Index Wage and Earners and Clerical Workers (CPI-W) Medical Care Component (MCC) for the Southern Region of the United States, or 3%, whichever is less.

**4.3.** **TERMINATION.**

    **4.3.1.** **TERMINATION FOR CAUSE.** The COUNTY reserves the right to terminate this AGREEMENT immediately in the event that QCHC discontinues or abandons operations, or if QCHC fails to comply with any section or part of this AGREEMENT. The COUNTY will pay for services rendered up to and including the point of termination, but will not pay any penalty.

    **4.3.2.** **TERMINATION WITHOUT CAUSE.** Notwithstanding anything to the contrary contained in this AGREEMENT, the COUNTY or QCHC may, without prejudice to any other rights they may have, terminate this AGREEMENT for their convenience and without cause, by giving ninety (90) days advance written notice to the other party.

## ARTICLE 5:
## GENERAL TERMS AND CONDITIONS

**5.1.** **AMENDMENTS.** This AGREEMENT may be amended at any time only with the written consent of both parties.

**5.2.** **ASSIGNMENT.** QCHC will not assign in whole or in part this AGREEMENT without the prior written consent of the SHERIFF. QCHC will not assign any money due or to become due under this AGREEMENT without the prior written consent of the SHERIFF.

**5.3.** **COMPLIANCE WITH FEDERAL, STATE AND LOCAL LAWS.** The COUNTY and QCHC agree that they will not require performance of any QCHC or SHERIFF employee, agent or independent contractor that would violate federal, state and/or local laws, ordinances, rules and/or regulations.

**5.4.** **COUNTERPARTS.** This AGREEMENT may be executed in several counterparts, each of which will be an original and all of which together will constitute but one and the same instrument.

**5.5.** **ENTIRE AGREEMENT.** This AGREEMENT constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof.

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 56 of 62 PageID #: 2809

5.6. **EQUAL EMPLOYMENT OPPORTUNITY.** QCHC will not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, age, veteran status, or disability unrelated to a bona fide occupational qualification of the position.

5.7. **EXCUSED PERFORMANCE.** In case performance of any terms of parts hereof will be delayed or prevented because of compliance with any law, decree, or order of any governmental agency or authority of local, state, or federal governments or because of riots, public disturbances, strikes, lockouts, differences with workers, fires, floods, Acts of God, or any other reason whatsoever which is not within the control of the parties whose performance is interfered with and which, by the exercise of reasonable diligence, said party is unable to prevent, the party so suffering may at its option, suspend, without liability, the performance of its obligations hereunder during the period such cause continues.

5.8. **GOVERNING LAW.** This AGREEMENT will be governed by the laws of the State of Tennessee.

5.9. **HOLD HARMLESS.**

5.9.1. QCHC will indemnify and hold harmless the COUNTY, the SHERIFF, and the JAIL employees against any loss or damage, including reasonable attorneys' fees and other costs of litigation, caused or necessitated by the sole negligence of QCHC, its agents, employees, and/or vendors which is related to medical treatment or care provided by QCHC.

5.9.2. QCHC will not be responsible for any claims arising from actions of the COUNTY, the SHERIFF, or any employee or agent of the JAIL who intentionally prevents any person from receiving medical care ordered by QCHC's medical staff, employees, agents or independent contractors.

5.9.3. QCHC will not be responsible for claims arising from negligence on the part of the COUNTY, the SHERIFF, or any employee or agent of the JAIL in presenting an individual to QCHC's medical staff, employees, agents or independent contractors, if it should have been reasonably known that the individual was in serious need of immediate medical attention.

5.10. **INDEPENDENT CONTRACTOR.** It is understood and agreed that an independent contractor relationship is hereby established under the terms and conditions of this AGREEMENT. The employees or agents of QCHC are not now, nor will they be deemed to be, employees of the COUNTY or the SHERIFF. The employees of the COUNTY/SHERIFF/JAIL are not now, nor will they be deemed to be, employees of QCHC. QCHC assumes all financial responsibility for the employees of QCHC, such as wages and withholding taxes, social security, sales and other taxes, which may be related to the services to be provided under this AGREEMENT.

5.11. **SUBCONTRACTING.** In order to discharge the obligations hereunder, QCHC may engage certain healthcare professionals as independent contractors rather than employees. As the relationship between QCHC and these healthcare professionals will be that of independent contractor, QCHC will not be considered or deemed to be engaged in the practice of medicine or other professions practiced by these professionals. QCHC will exercise control over the manner of means by which these independent contractors perform their medical duties. This control will be exercised reasonably consistent with the independent medical judgment these independent contractors are required to exercise. QCHC will exercise administrative supervision over such professionals necessary to ensure the strict fulfillment of the obligations contained in this AGREEMENT. All terms and conditions of this AGREEMENT will be included in all such subcontracts. For each agent

Case 3:17-cv-01335   Document 102-3   Filed 06/12/19   Page 57 of 62 PageID #: 870

and subcontractor, including all medical professionals, physicians, and nurses performing duties as agents or independent contractors of QCHC under this AGREEMENT, QCHC will provide to the COUNTY proof that, for each such professional, there is in effect during the period that person is engaged in the performance of this AGREEMENT, a professional liability or medical malpractice insurance policy, in an amount or amounts of One Million Dollars ($1,000,000) coverage per occurrence and Three Million Dollars ($3,000,000) annual aggregate coverage.

5.12.  **INSURANCE.** QCHC will procure and maintain in effect throughout the term of this AGREEMENT insurance policies with coverage not less than the types and amounts specified in this section.

   5.12.1. Commercial General Liability Insurance Policy with limits of One Million Dollars ($1,000,000) per occurrence and an annual aggregate limit of Three Million Dollars ($3,000,000).

   5.12.2. Professional Liability Insurance with limits per claim of One Million Dollars ($1,000,000) and an annual aggregate of Three Million Dollars ($3,000,000).

5.13.  **CERTIFICATE OF INSURANCE.** QCHC agrees to name the COUNTY as an additional insured under the insurance policies listed in Section 5.12, and to provide the COUNTY with a Certificate of Insurance evidencing the terms of the insurance coverage and policy limits.

5.14.  **NOTICES.** All notices to the SHERIFF and/or the COUNTY will be addressed to the Cheatham County Sheriff's Office, Attention: Sheriff Mike Breedlove; 200 Court Square; Ashland City, TN 37015. All notices to QCHC will be addressed to Quality Correctional Health Care, Attn: Justin Barkley; 200 Narrows Parkway, Suite A; Birmingham, Alabama 35242.

5.15.  **OTHER CONTRACTS AND THIRD PARTY BENEFICIARIES.** The parties acknowledge that QCHC is neither bound by nor aware of any other existing contracts to which the COUNTY is a party and which relate to the provision of healthcare to INMATES/DETAINEES at the JAIL. The parties agree that they have not entered into this AGREEMENT for the benefit of any third person(s) and it is their express intention that this AGREEMENT is intended to be for their respective benefits only and not for the benefits of others who might otherwise be deemed to constitute third party beneficiaries thereof.

5.16.  **SEVERABILITY.** In the event any part of this AGREEMENT is held to be unenforceable for any reason, the unenforceability thereof will not affect the remainder of this AGREEMENT, which will remain in full force and effect and be enforceable in accordance with its terms.

5.17.  **WAIVER OF BREACH.** The waiver of either party of a breach or violation of any part of this AGREEMENT will not operate as, or be construed to be, a waiver of any subsequent breach of the same or other part hereof.

**IN WITNESS WHEREOF**, the parties hereto have hereunto set their hands and seals the date and year written below.

[SIGNATURES APPEAR ON FOLLOWING PAGES]

Case 3:17-cv-01335    Document 102-3    Filed 06/12/19    Page 58 of 62 PageID #: 0801

**CHEATHAM COUNTY, TENNESSEE**

By: _David McCullough, County Mayor_

Its: _____

**STATE OF TENNESSEE** )
**CHEATHAM COUNTY** )

I, the undersigned Notary Public in and for said County and State, hereby certify that _David McCullough_ , whose name as _David McCullough_ of Cheatham County, is signed to the foregoing Health Services Agreement, and who is known to me, acknowledged to me on this day that, being informed of the contents of the Health Services Agreement, executed the same voluntarily for and as the act of said Cheatham County, on the day the same bears date.

Given under my hand this _3rd_ day of _November_ 2014.

Notary Public _Teresa Gupton_

My Commission Expires: _8-31-2018_

# CHEATHAM COUNTY SHERIFF'S OFFICE
## Offense / Incident Report

**GENERAL OFFENSE INFORMATION**  **Report Type:** Cumulative Report

| | | | |
|---|---|---|---|
| Agency | CHEATHAM COUNTY SHERIFF OFFICE | Location | 200 COURT SQUARE |
| Case # | 161006-0062 | | ASHLAND CITY TENNESSEE 37015 |
| File # | | | |
| Description | WARRANT SERVICE | | |
| Incident Status | CLEARED BY ARREST | From Date/Time | 10/06/2016 12:50 |
| | | To Date/Time | 10/06/2016 12:50 |
| | | Report Date | 10/06/2016 12:50 |
| Reporting Officer | ETHRIDGE, JEREMY | Initial Rep. Date | 10/06/2016 12:50 |

### OFFENSE(S)

| | | | |
|---|---|---|---|
| Offense | FAILURE TO APPEAR- MISDEMEANOR (MISD) | | |
| Statute | 39-16-609 | | |
| Attempt Status | COMPLETED | | |
| Offense Status | ACTIVE | | |
| Location | GOVERNMENT/PUBLIC BLDG | | |
| Computer | N | Alcohol N | Drug N |
| Weapons | | | |
| Criminal Activity | | | |
| Bias Type | NONE (NO BIAS) | Bias Motivation | |

### COMPLAINANT

| | | | | | |
|---|---|---|---|---|---|
| Name | STATE OF TENNESSEE, | | | | |
| Address | 200 COURT SQUARE  ASHLAND CITY TN 37015 | | | Phone | -   - |
| Race | | Ethnic | Sex | DOB | **/**/** (***) |
| Height | | Weight | Hair | Eyes | |
| S.S.N. | ___-__-____ | DL & St. | JRN# | | |

### VICTIM(S)

| | | | | | |
|---|---|---|---|---|---|
| Name | STATE OF TENNESSEE, | | | | |
| Address | 200 COURT SQUARE  ASHLAND CITY, TN 37015 | | | Phone | ___-___-____ |
| Race | | Ethnic | Sex | DOB | **/**/** (***) |
| Height | | Weight | Hair | Eyes | |
| S.S.N. | ___-__-____ | DL.& St. | JRN# | | |
| Type of Victim | SOCIETY/PUBLIC | Victim Of | NONE | Injury Type | |
| Homicide/Assault Circumstance | | | | | |

## SUBJECT(S)

| Name | HULSEY, ANGELA DENISE | | | | | | |
|------|------------------------|--|--|--|--|--|--|
| Address | 1915 HIGHWAY 12 NORTH  ASHLAND CITY, TN 37015 | | | | | Phone | 615-981-1014 |
| Race | W | Ethnic | N | Sex | F | DOB | **/**/** (***) |
| Height | 5'02" | Weight | 120 | Hair | BRO | Eyes | BRO |
| S.S.N. | ***-**-**** | DL & St. | ******** | JRN# | 1605310034 | | |
| Sub. Type | ARRESTEE | Arrest ID | 161006-0062 | Citation # | | | |
| Notes | | | | | | | |

| Entered By | ETHRIDGE, JEREMY | |
|------------|------------------|--|
| Officer | ETHRIDGE, JEREMY | |
| Supervisor | WHITT, TIFFANY | |

Case 3:17-cv-01335   Document 102-3   Filed 06/12/19   Page 61 of 62 PageID #: 814

HULSEY 0424

# Incident # 161006-0062

ETHRIDGE, JEREMY

On the above date and time, I served Angela Hulsey with a warrant for her arrest for Failure to Appear.

Case 3:17-cv-01335     Document 102-3     Filed 06/12/19     Page 62 of 62 PageID #: 915

HULSEY 0425