IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARGARET CRAIG, as next of kin and personal representative of the estate of Angela Hulsey, ) ) ) ) | |
| PLAINTIFF, ) ) | |
| vs. ) ) | No. 3:17-cv-01335 JURY DEMAND |
| CHEATHAM COUNTY, TENNESSEE; ) BEN MOORE; MARK BRYANT; ) et al., ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE HOLMES |
| DEFENDANTS. ) | |

**RESPONSE**
(TO INDIVIDUAL COUNTY DEFENDANT'S STATEMENT OF MATERIAL FACTS)

Comes the Plaintiff and respectfully responds to the Individual County Defendant's Statement of Material Facts (Document No. 99) as follows:

1. Ms. Hulsey suffered from a severe drug addiction.

**RESPONSE:** It is disputed that this is a material fact.[1] It is also disputed as written as these individuals did not testify that Ms. Hulsey had a "severe drug addiction." However, for the purposes of this motion, it is undisputed that Ms. Hulsey was a user of certain drugs.

2. On September 30, 2016, Ms. Hulsey was treated at Gateway Medical Center

---

[1] Ms. Hulsey's death was not related to a drug overdose. She died as a result of a serious infection (bacteremia and endocarditis) going untreated leading to an anoxic brain injury related to septic shock. See Deposition of Dr. Horton at p. 53, ln. 10 - 16; Exhibit 2 to Dr. Horton's Deposition (Document No. 102-2); and Deposition of Dr. Nolan p. 16, ln. 5 - 9.

for a drug overdose.

  **RESPONSE:**  It is disputed that this is a material fact. However, for the purposes of this motion, it is undisputed that Ms. Hulsey was treated at Gateway Medical Center on September 30, 2016, and that her treatment was related to drug use as well as a serious infection. See Deposition of Dr. Nolan at p. 10, ln. 1 - p. 11, ln. 21.

  3.  She tested positive for benzodiazepines, opiods, methamphetamine, and cannabis.

  **RESPONSE:**  It is disputed that this is a material fact. However, for the purposes of this motion it is undisputed that Ms. Hulsey's drug screen was positive for these drugs on September 30, 2016.

  4.  Ms. Hulsey presented with multiple needle track marks consistent with IV drug use.

  **RESPONSE:**  It is disputed that this is a material fact. However, this fact is otherwise undisputed for the purposes of this motion.

  5.  Gateway took urine and blood samples that were not yet finalized, but the treating physician found gram-positive cocci in her blood.

  **RESPONSE:**  It is disputed that this is a material fact for the issues in this motion.[2] However, this fact is otherwise undisputed.

---

[2]  Defendants have not contested that Ms. Hulsey had a serious medical condition, endocarditis. See Individual County Defendant's Memorandum at Document No. 98, PageID #: 501.

6. Ms. Hulsey left the facility against the advice of her physician on October 1, 2016.

**RESPONSE:** It is disputed that this is a material fact.[3] However, for the purposes of this motion, it is undisputed that Ms. Hulsey left Gateway Medical Center without receiving all of the recommended treatment.

7. Two days later, on October 3, 2016, Ms. Hulsey treated at Centennial Medical Center.

**RESPONSE:** It is disputed that this is a material fact. However, this fact is otherwise undisputed for the purposes of this motion.

8. She claimed to have experienced drooping on the left side of her face for two days.

**RESPONSE:** It is undisputed that Ms. Hulsey experienced visually obvious drooping of her face which she reported to Centennial Medical Center on October 3, 2016.

9. Ms. Hulsey's treaters at Centennial diagnosed her with Bell's Palsy Syndrome.

**RESPONSE:** It is disputed that this is a material fact. However, it is otherwise undisputed that Ms. Hulsey was provided with this diagnosis and discharged.

---

[3] Defendants are attempting to make a comparative fault argument regarding Ms. Hulsey leaving the hospital prior to her treatment being completed. However, fault is not compared in civil rights cases. See *McHugh v. Olympia Entertainment, Inc.*, 37 F. App'x 730, 736 (6th Cir. 2002).

10. Centennial did not diagnose Ms. Hulsey as being bacteremic.

**RESPONSE:** It is disputed that this is a material fact.[4] It is otherwise undisputed that Ms. Hulsey did not receive a diagnosis from Centennial Medical Center that she was bacteremic.

11. On October 6, 2016, Ms. Hulsey was arrested in Cheatham County pursuant to a warrant for failure to appear.

**RESPONSE:** This fact is undisputed.

12. Ms. Hulsey was booked into the Cheatham County Jail (the "County Jail" or "Jail") at 1:12 p.m. on the same day.

**RESPONSE:** This fact is undisputed for the purposes of this motion.

13. At the time of booking, Ms. Hulsey indicated that she was not taking any medications.

**RESPONSE:** This fact is disputed. The cited reference by the Defendants is to a printed intake form. That form contains incorrect information that was not provided by Ms. Hulsey at the time of her booking. Ms. Hulsey specifically informed the booking staff at the jail that she was seriously ill, that she had just come from the hospital and was on her way to another hospital, that she had a blood infection, and that she appeared to have had a stroke. See Deposition of Billy Jack Newman at p. 14, ln. 12 - 16; p. 37, ln. 2

---

[4] Defendants again attempt to create an issue of comparative fault of medical negligence against a third party, Centennial Medical Center. However, such claims are not permitted in civil rights cases. See *McHugh*.

- 5; and p. 40, ln. 9 - 13 and Deposition of Jeremy Shivers at p. 24, ln. 10 - 14 and p. 42, ln. 3 - 17.

The printed intake form referenced by Defendants is not signed by Ms. Hulsey and no signature has ever been produced by Defendant Cheatham County. Inmate Billy Jack Newman testified that during the booking process the jail staff takes handwritten information from individuals being booked which is then signed by the individual. See Deposition of Billy Jack Newman at p. 114, ln. 4 - 15. This was confirmed by Defendant Mark Bryant in his deposition testimony. Defendant Bryant testified that a handwritten form is first created then the information is transferred into the computer later. The handwritten form is kept in storage at the jail, and there is no reason the jail would not have the handwritten form created at the time of Ms. Hulsey's intake and booking. See Deposition of Mark Bryant at p. 24, ln. 25 - p. 26, ln. 10.

Ms. Plank also testified that this particular intake form was not provided to her until October 12, 2016, the day that Ms. Hulsey became nonresponsive and was transported from the jail via ambulance. This is despite the fact that normal policy was to provide intake forms to Ms. Plank usually by the next day after a person is placed into custody and despite the fact that Ms. Plank had personally requested the intake form the day before. See Deposition of Jessica (Plank) Treichler at p. 31, ln. 3 - 9; p. 37, ln. 6 - 25; p. 114, ln. 4 - 24; and p. 151, ln. 3 - 13.

Although all of the jail records were requested prior to the lawsuit being filed as well as in discovery, Defendant Cheatham County has never produced the original handwritten form signed by Ms. Hulsey. It is reasonable, therefore, for the finder of fact to infer that the jail either improperly entered the information into the computer or intentionally put false

information into the electronic form.

14. In response to a question asking "[d]o you have any injuries and/or illnesses that need treatment at this time. . .," Ms. Hulsey only indicated that she had fluid in her left knee and leg.

**RESPONSE:** This fact is disputed. As discussed in the previous response, the referenced intake form does not contain accurate information obtained from Ms. Hulsey. Furthermore, both Jeremy Shivers and Billy Jack Newman have testified that Ms. Hulsey reported to the jail that Ms. Hulsey was seriously ill, that she had just been to a hospital and was on her way to a hospital at the time of her arrest, that she had an apparent stroke, and that she was suffering from a blood infection. See Deposition of Billy Jack Newman at p. 14, ln. 12 - 16; p. 37, ln. 2 - 5; and p. 40, ln. 9 - 13 and Deposition of Jeremy Shivers at p. 24, ln. 10 - 14 and p. 42, ln. 3 - 17.

Furthermore, Billy Jack Newman testified that Ms. Hulsey's serious illness was obvious at the time she was being booked. See Deposition of Billy Jack Newman at p. 36, ln. 1 - 11. Defendant Bryant confirmed that the handwritten intake form includes an area for jail staff to include their own observations of Ms. Hulsey's condition. However, the printed form provided by Defendant Cheatham County is missing that information. See Deposition of Mark Bryant at p. 27, ln. 9 - p. 28, ln. 10.

It is reasonable, therefore, for the trier of fact to find that Ms. Hulsey did actually report her illness to the jail and to infer that Defendant Cheatham County has intentionally withheld or falsified evidence.

15. Ms. Hulsey did not inform Jail staff that she had left Gateway Medical Center - against the advice of her treater - or received treatment at Centennial only days before.

**RESPONSE:** This fact is disputed. Ms. Hulsey did report her conditions and the fact that she had been to the hospital prior to her arrest. See responses to previous statements.

16. On the morning of October 10, 2016, Ms. Hulsey was housed in the big dorm; CO Tashia Biggs responded to someone hitting the buzzer to request help.

**RESPONSE:** This fact is undisputed for the purposes of this motion.

17. Ms. Hulsey had defecated in her clothes.

**RESPONSE:** Assuming this statement is related to the previous statement, it is undisputed that Ms. Hulsey had uncontrollable bowel movements of which Defendant Biggs was personally aware.

18. CO Biggs reported the incident to her supervisor, Cpl. Ben Moore.

**RESPONSE:** This fact is disputed. Defendant Moore testified that he was only aware of one bowel movement which took place on October 11, 2016. He testified that he was unaware of any other bowel movements at that time. See Deposition of Benjamin Moore at p. 20, ln. 17 - p. 21, ln. 5.

19. CO Biggs recalls that Cpl. Moore advised Nurse Plank about Ms. Hulsey's condition.

**RESPONSE:** This fact is disputed as written. "Condition" is not defined. One of the primary issues in this case was the withholding of information which was known to jail staff but not communicated to Nurse Plank. Plaintiff is unable, therefore, to agree what exactly was told to Nurse Plank by Defendant Moore. See also generally Plaintiff's Responses to Defendants' Motions for Summary Judgment.

20. Nurse Plank ordered that Ms. Hulsey be moved to the booking area for medical watch.

**RESPONSE:** This fact is disputed as written. Nurse Plank testified in her deposition that she saw Ms. Hulsey in the booking area. Therefore, she had already been moved from the "Big Dorm" to booking by the time Nurse Plank had any interaction with her. See Deposition of Jessica (Plank) Treichler at p. 91, ln. 16 - 19 and p. 92, ln. 5 - 22

21. Ms. Hulsey then met with Nurse Plank.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. This fact is otherwise undisputed for the purposes of this motion.

22. CO Biggs assisted Ms. Hulsey to the shower.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. This fact is otherwise undisputed for the purposes of this motion.

23. For the remainder of the day and night, various correctional officers observed Ms. Hulsey about every hour.

**RESPONSE:** This fact is undisputed for the purposes of this motion.

24. On the morning of October 11th, Nurse Plank saw Ms. Hulsey.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. This fact is otherwise undisputed for the purposes of this motion.

25. According to Nurse Plank's notes, Ms. Hulsey indicated that she was feeling better.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. It is otherwise undisputed for the purposes of this motion that Nurse Plank's notes contain this statement.

26. Ms. Hulsey begged to be returned to the general population so she could move around more.

**RESPONSE:** This fact is disputed. Billy Jack Newman testified in his deposition that Ms. Hulsey never requested to be moved back to the dorm. See Deposition of Billy Jack Newman at p. 43, ln. 22 - 25.

27. Nurse Plank noted that Ms. Hulsey looked better and appeared more active. Nurse Plank permitted Ms. Hulsey to return to the regular dorm.

**RESPONSE:** This fact is disputed as written. While it is undisputed that Nurse Plank made these notations, Billy Jack Newman indicated that Ms. Hulsey was not wanting to go back to the dorm. See Deposition of Billy Jack Newman at p. 43, ln. 22- 25.

28. On the evening of October 11, CO Gerow-Durham took Ms. Hulsey's vitals upon her request.

**RESPONSE:** This fact is disputed as written. Defendant Gerow was unable to take Ms. Hulsey's vital signs due to Ms. Hulsey having a seizure. See Deposition of Harley (Gerow) Durham at p. 49, ln. 15 - 18.

29. Ms. Hulsey indicated that she was not feeling well and that she had not stayed sober.

**RESPONSE:** It is disputed that this is a material fact. This fact is also disputed as written. Defendant Gerow's testimony was the Ms. Hulsey told her she did not "do good with staying sober." It is otherwise undisputed that Ms. Hulsey told Defendant Gerow that she was not feeling well.

30. While CO Gerow-Durham was taking Ms. Hulsey's vitals, CO Gerow-Durham believed that Ms. Hulsey had a seizure.

**RESPONSE:** This fact is undisputed.

31. CO Gerow-Durham grabbed Ms. Hulsey by the front of her uniform to prevent her from falling down from where she was seated at a table.

**RESPONSE:** This fact is disputed as written. While it is undisputed that Defendant Gerow grabbed Ms. Hulsey's shirt to prevent her from falling, she also requested the assistance of inmates to help prevent Ms. Hulsey from falling. See Deposition of Harley (Gerow) Durham at p. 47, ln. 11 - 12 and Deposition of Tia Newman

at p. 22, ln. 11 - 15.

  32.  CO Gerow-Durham eased Ms. Hulsey to the ground with the assistance of an inmate.

  **RESPONSE:**  This fact is undisputed.

  33.  CO Gerow-Durham called for her supervisor, Cpl. Mark Bryant, to come to the dorm where she and Ms. Hulsey were located.

  **RESPONSE:**  This fact is disputed. Defendant Bryant has denied being called to the dorm by Defendant Gerow and insists that he responded to the dorm because of a call over the intercom by an inmate claiming there was a medical emergency. See Deposition of Mark Bryant at p. 43, ln. 21 - 24.

  34.  CO Gerow-Durham recalls explaining to CO Bryant that she believed Ms. Hulsey suffered from a seizure.

  **RESPONSE:**  This is disputed as written. While it is undisputed that Defendant Gerow testified that this was her recollection, Defendant Bryant claims he was never told about Ms. Hulsey suffering from a seizure and that had he been told that information he would have told the nurse, which he did not do. See Deposition of Mark Bryant at p. 45, ln. 25 - p. 46, ln. 8. Therefore, it is reasonable for the trier of fact to infer that either Defendant Gerow is lying about telling Defendant Bryant about the seizure or that Defendant Bryant is lying about not being told about the seizure. It is undisputed that neither Defendant Gerow nor Defendant Bryant told Nurse Plank about the seizure.

35. Cpl. Bryant escorted Ms. Hulsey to the booking area for medical watch.

**RESPONSE:** This fact is undisputed.

36. CO Bryant called Nurse Plank and communicated that Ms. Hulsey was complaining of some pain, was not feeling right, and appeared to be panicking.

**RESPONSE:** It is disputed that this is a material fact. The substance of the discussion between Defendant Bryant and Ms. Plank is also disputed between the two of them. Ms. Plank claims the she was only told what appeared in her notes, specifically that Defendant Bryant reported to her that Ms. Hulsey was not feeling well, that she had a headache, was panicking, and was continuing to have trouble with bowel movements. This conversation resulted in Ms. Hulsey being given Tylenol for her headache. See Deposition of Jessica (Plank) Treichler at p. 120, ln. 18 - p. 122, ln. 17. Ms. Plank also claims that she was never provided any vital signs by Defendant Bryant or any other jail staff. See Deposition of Jessica (Plank) Treichler at p. 88, ln. 5 - 15 and p. 160, ln. 7 - 12.

Defendant Bryant, on the other hand, claimed that he specifically told Ms. Plank that Ms. Hulsey was complaining of pain, that she was panicking, and that she did not feel good. He also claims to have provided the nurse with Ms. Hulsey's vital signs and that was the whole purpose of the call. As mentioned above, however, Ms. Plank did not record any vital signs nor did Defendant Bryant. Defendant Bryant also claims he never told Ms. Plank about Ms. Hulsey having a bowel movement because that had not happened at that point in time. See Deposition of Mark Bryant at p. 44, ln. 3 - p. 47, ln. 10 and p. 49, ln. 22 - p. 50, ln. 6. Both agree, however, that Defendant Bryant did not tell Ms. Plank that Ms. Hulsey had experienced a seizure in front of jail staff. See Deposition of Jessica (Plank)

Treichler at p. 98, ln. 18 - p. 99, ln. 5.

37. CO Bryant also reported that Ms. Hulsey was having problems with her bowels.

**RESPONSE:** This fact is disputed. As discussed in the above response, Defendant Bryant claims he did not tell Nurse Plank about a bowel movement because that had not happened at the time of the phone call. See response to statement number 36.

38. Cpl. Bryant communicated to Nurse Plank Ms. Hulsey's vitals, and Nurse Plank implemented a headache protocol.

**RESPONSE:** This statement is disputed as written. It is undisputed that Ms. Plank instructed Defendant Bryant to administer over-the-counter Tylenol to Ms. Hulsey as part of a headache protocol. However, as discussed in response to statement number 36, Defendant Bryant claims he gave vitals while Nurse Plank claims he did not and neither recorded any vital signs in any logs or notes.

39. Nurse Plank instructed Cpl. Bryant to give Ms. Hulsey pain Tylenol.

**RESPONSE:** This fact is disputed as written. It is undisputed that Nurse Plank gave instructions to follow the headache protocol which included administering over-the-counter Tylenol by Defendant Bryant.

40. The morning of October 12th, Ms. Hulsey informed CO Brandon Reasonover that she did not feel well and needed to see the nurse.

**RESPONSE:** It is disputed that this is a material fact. As previously discussed, Ms. Hulsey had been telling jail staff she was not feeling well the entire time she was in custody of Defendant Cheatham County. However, for the purposes of this motion, this fact is undisputed.

41. CO Reasonover reported this to his supervisor, informed Cpl. Ben Moore.

**RESPONSE:** It is disputed that this is a material fact. This fact is otherwise undisputed for the purposes of this motion.

42. Cpl. Moore instructed CO Reasonover to advise the nurse that Ms. Hulsey was not well.

**RESPONSE:** It is disputed that this is a material fact. This fact is otherwise undisputed for the purposes of this motion.

43. Cpl. Moore had Ms. Hulsey escorted to a chair at the booking area to wait on Nurse Plank.

**RESPONSE:** It is disputed that this is a material fact. This fact is otherwise undisputed for the purposes of this motion.

44. Cpl. Moore told Nurse Plank that Ms. Hulsey was panicking.

**RESPONSE:** It is disputed that this is a material fact. This fact is otherwise undisputed for the purposes of this motion.

45. Nurse Plank found Ms. Hulsey at the booking counter.

**RESPONSE:** It is disputed that this is a material fact. This fact is otherwise undisputed for the purposes of this motion.

46. Ms. Hulsey was returned to her cell on medical watch.

**RESPONSE:** It is disputed that this is a material fact. This fact is otherwise undisputed for the purposes of this motion.

47. Cpl. Moore found Ms. Hulsey unresponsive and drooling; he immediately alerted Nurse Plank.

**RESPONSE:** It is disputed that this is a material fact. This fact is otherwise undisputed for the purposes of this motion.

48. Cpl. Moore recalls calling 9-1-1 and communicating that they had a nonresponsive inmate in the cell and provided her approximate age and weight.

**RESPONSE:** It is disputed that this is a material fact. This fact is also disputed as written. Although Defendant Moore testified in his deposition that he did not tell the 9-1-1 operator that Ms. Hulsey was detoxing from drugs, the dispatch log indicates that he did tell them this information. He also claimed that he believed Ms. Hulsey was detoxing from drugs while at the jail but it is disputed as to whether he ever communicated this fact to Nurse Plank. This fact is otherwise undisputed for the purposes of this motion. See Document No. 102-3 at PageID #: 796 and Deposition of Benjamin Moore at p. 25, ln. 20 - p. 28, ln. 12 and Deposition of Jessica (Plank) Treichler at p. 90, ln. 1 - 3.

49. CO Paul only interacted with Ms. Hulsey on one occasion on October 8, 2016. CO Paul logged Ms. Hulsey's vitals, which included a blood pressure reading of 144 over 99.

**RESPONSE:** It is undisputed that Defendant Paul took Ms. Hulsey's vital signs and recorded them in the log on October 8, 2016. However, the blood pressure reading of 144 over 99 indicated stage two hypertension and required him to contact the nurse. There is no record that he did so and Nurse Plank testified that she was never told about anyone else taking Ms. Hulsey's vital signs. See Deposition of Jessica (Plank) Treichler at p. 160, ln. 1 - 12. See also Headache Protocol previously filed at Document No. 102-3 at PageID #: 773 indicating at Findings number 11 that any blood pressure reading greater than 140 over 90 required referral to the doctor.

Respectfully submitted,

MOSELEY & MOSELEY
ATTORNEYS AT LAW

BY: /s/ James Bryan Moseley
    James Bryan Moseley, No. 021236
Attorneys for Plaintiff

237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
615/ 254-0140
Fax: 615/ 244-2270

## CERTIFICATE OF SERVICE

       I hereby certify that on this the 3rd day of July, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties, if any, will be served separately. Parties may access this filing through the Court's electronic filing system.

Jeffrey Beemer, Esq.
Ariel M. Kelly, Esq.
424 Church St., Suite 800
Nashville, Tennessee 37219
Attorneys for Defendant Cheatham County

Robyn Williams, Esq.
Cassandra M. Crane, Esq.
211 Seventh Ave. N, Suite 500
Nashville, Tennessee 37219
Attorney for Individual County Defendants

Marc Dedman, Esq.
**SPICER RUDSTROM, PLLC**
414 Union Street, Suite 1700
Nashville, Tennessee 37219
Attorney for Defendant Plank

       /s/ James Bryan Moseley
       James Bryan Moseley

Copy to:    Raymond T. Throckmorton, III, Esq.