IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARGARET CRAIG, as next of kin and personal representative of the estate of Angela Hulsey, | ) ) ) ) | |
| PLAINTIFF, | ) ) ) | |
| vs. | ) ) | No. 3:17-cv-01335 JURY DEMAND |
| CHEATHAM COUNTY, TENNESSEE; BEN MOORE; MARK BRYANT; et al., | ) ) ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE HOLMES |
| DEFENDANTS. | ) | |

**RESPONSE**
(TO DEFENDANT CHEATHAM COUNTY'S STATEMENT OF MATERIAL FACTS)

Comes the Plaintiff and respectfully responds to Defendant Cheatham County's Statement of Material Facts (Document No. 103) as follows:

1. On September 30, 2016, Ms. Hulsey was transported by ambulance to Gateway Medical Center ("Gateway") in Clarksville for an overdose on narcotics.

**RESPONSE:** It is disputed that this is a material fact.[1] This statement is also disputed as written.[2] However, for the purposes of this motion, it is undisputed that Ms. Hulsey was treated at Gateway Medical Center on September 30, 2016, and that her

---

[1] Ms. Hulsey's death was not related to a drug overdose. She died as a result of a serious infection (bacteremia and endocarditis) going untreated leading to an anoxic brain injury related to septic shock. See Deposition of Dr. Horton at p. 53, ln. 10 - 16; Exhibit 2 to Dr. Horton's Deposition (Document No. 102-2); and Deposition of Dr. Nolan p. 16, ln. 5 - 9.

[2] Dr. Nolan does not testify that Ms. Hulsey was transported by ambulance to Gateway Medical Center for an overdose on narcotics.

treatment was related to drug use as well as a serious infection. See Deposition of Dr. Nolan at p. 10, ln. 1 - p. 11, ln. 21.

2. On September 30, 2016, Ms. Hulsey's drug screen at Gateway Medical Center was positive for benzodiazepines, opiates, methamphetamine, and cannabis.

**RESPONSE:** It is disputed that this is a material fact. However, for the purposes of this motion it is undisputed that Ms. Hulsey's drug screen was positive for these drugs on that date.

3. Cultures of Ms. Hulsey's blood were obtained on September 30, 2016, which showed gram positive cocci in her blood stream.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion.[3] However, this fact is otherwise undisputed.

4. Ms. Hulsey's treating physician at Gateway Medical Center determined that Ms. Hulsey needed at least 24 hours of inpatient care even before he had received Ms. Hulsey's finalized blood cultures.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. However, this fact is otherwise undisputed.

---

[3] Defendant Cheatham County has admitted that Ms. Hulsey had a serious medical condition, endocarditis. See Defendant Cheatham County's Memorandum at Document No. 102, PageID #: 720. There is no claim that Defendant Cheatham County knew about the specific blood culture results. Defendant Cheatham County, through its staff, however, was made aware that Ms. Hulsey had just been hospitalized for a blood infection. See Deposition of Billy Jack Newman at p. 14, ln. 12 - 16; p. 37, ln. 2 - 5; and p. 40, ln. 9 - 13.

5. On October 1, 2016, before her treating physician received her finalized blood cultures, Ms. Hulsey left Gateway Medical Center against medical advice.

**RESPONSE:** It is disputed that this is a material fact.[4] However, for the purposes of this motion, it is undisputed that Ms. Hulsey left Gateway Medical Center without receiving all of the recommended treatment.

6. After Ms. Hulsey left Gateway Medical Center against medical advice, on October 3, 2016, the final report for Ms. Hulsey's blood cultures came back as positive for Methicillin-resistant Staphylococcus aureus, or "MRSA."

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. However, it is otherwise undisputed that Ms. Hulsey's blood was infected with MRSA bacteria.

7. As of September 30, 2016, Ms. Hulsey had endocarditis, which is an infection on one of the valves of her heart.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. However, it is otherwise undisputed that Ms. Hulsey had endocarditis.

8. The typical length of IV antibiotic treatment for someone with Ms. Hulsey's infection was at least four weeks of IV antibiotics.

**RESPONSE:** It undisputed that the typical length of IV antibiotics for someone

---

[4] Defendant Cheatham County is attempting to make a comparative fault argument regarding Ms. Hulsey leaving the hospital prior to her treatment being completed. However, fault is not compared in civil rights cases. See *McHugh v. Olympia Entertainment, Inc.*, 37 F. App'x 730, 736 (6th Cir. 2002).

with endocarditis would be a course lasting at least four weeks.

9. On October 3, 2016, which was three days before she was taken into custody by the Cheatham County Sheriff's Department, Ms. Hulsey went to the emergency room at Centennial Medical Center ("Centennial") in Nashville with complaints of drooping of the left side of her face.

**RESPONSE:** It is disputed that this is a material fact. However, it is otherwise undisputed that Ms. Hulsey also sought treatment at Centennial Medical Center for her illness which included complaints of left side face drooping.

10. On October 3, 2016, Ms. Hulsey tested positive for opiates, methamphetamine, benzodiazepines, and cannabis in a urine drug screen.

**RESPONSE:** It is disputed that this is a material fact. It is otherwise undisputed that Ms. Hulsey's drug screen on this date continued to show the presence of these drugs.[5]

11. Ms. Hulsey was not admitted to Centennial Medical Center on October 3, 2016. Instead, she was diagnosed with Bell's Palsy and discharged.

**RESPONSE:** It is disputed that this is a material fact.[6] It is otherwise

---

[5] To the extent that Defendant Cheatham County wishes to infer Ms. Hulsey's continued drug use after September 30, 2016, that inference is not supported by the record as these drugs could continue to be present for an extended period of time after their use. See Deposition of Dr. Horton at p. 43, ln. 10 - 20.

[6] Defendant Cheatham County again attempts to create an issue of comparative fault of medical negligence against a third party, Centennial Medical Center. However, such claims are not permitted in civil rights cases. See *McHugh*.

undisputed that Ms. Hulsey was provided with this diagnosis and discharged.

12. Dr. Nolan believes that Ms. Hulsey's infection had spread to her brain as of October 3, 2016.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. However, it is otherwise undisputed that Dr. Nolan holds this belief based on the medical records and observational reports from witnesses.

13. Cheatham County Deputy Jeremy Ethridge took Ms. Hulsey into custody on multiple outstanding warrants for failure to appear on Thursday, October 6, 2016 at approximately 12:50 p.m.

**RESPONSE:** It is disputed that this is a material fact. It is also disputed as written.[7] It is otherwise undisputed that Ms. Hulsey was taken into the custody of Defendant Cheatham County on October 6, 2016.

14. Ms. Hulsey was booked into the Cheatham County Jail at 1:12 p.m. on October 6, 2016.

**RESPONSE:** It is disputed that the time of Ms. Hulsey's booking is a material fact. This fact is otherwise undisputed for the purposes of this motion.

---

[7] The cited reference is to an individual, Johnny Hannah, who does not have personal knowledge of the circumstances of Ms. Hulsey's arrest. Instead, that individual references another exhibit to support the claim that Ms. Hulsey was arrested on multiple warrants. The cited exhibit, however, only shows an arrest for a single misdemeanor failure to appear. See Document No. 102-3 at PageID #: 771 and 813 - 815.

15. During the booking process on October 6, 2016, Ms. Hulsey denied that she was currently taking any medications.

**RESPONSE:** This fact is disputed. The cited reference by Defendant Cheatham County is to a printed intake form. That form contains incorrect information that was not provided by Ms. Hulsey at the time of her booking. Ms. Hulsey specifically informed the booking staff at the jail that she was seriously ill, that she had just come from the hospital and was on her way to another hospital, that she had a blood infection, and that she appeared to have had a stroke. See Deposition of Billy Jack Newman at p. 14, ln. 12 - 16; p. 37, ln. 2 - 5; and p. 40, ln. 9 - 13 and Deposition of Jeremy Shivers at p. 24, ln. 10 - 14 and p. 42, ln. 3 - 17.

The printed intake form referenced by Defendant Cheatham County is not signed by Ms. Hulsey and no signature has ever been produced by Defendant Cheatham County. Inmate Billy Jack Newman testified that during the booking process the jail staff takes handwritten information from individuals being booked which is then signed by the individual. See Deposition of Billy Jack Newman at p. 114, ln. 4 - 15. This was confirmed by Defendant Mark Bryant in his deposition testimony. Defendant Bryant testified that a handwritten form is first created then the information is transferred into the computer later. The handwritten form is kept in storage at the jail, and there is no reason the jail would not have the handwritten form created at the time of Ms. Hulsey's intake and booking. See Deposition of Mark Bryant at p. 24, ln. 25 - p. 26, ln. 10.

Ms. Plank also testified that this particular intake form was not provided to her until October 12, 2016, the day that Ms. Hulsey became nonresponsive and was transported from the jail via ambulance. This is despite the fact that normal policy was to provide

intake forms to Ms. Plank usually by the next day after a person is placed into custody and despite the fact that Ms. Plank had personally requested the intake form the day before. See Deposition of Jessica (Plank) Treichler at p. 31, ln. 3 - 9; p. 37, ln. 6 - 25; p. 114, ln. 4 - 24; and p. 151, ln. 3 - 13.

Although all of the jail records were requested prior to the lawsuit being filed as well as in discovery, Defendant Cheatham County has never produced the original handwritten form signed by Ms. Hulsey. It is reasonable, therefore, for the finder of fact to infer that the jail either improperly entered the information into the computer or intentionally put false information into the electronic form.

16. When asked if she had any injuries and/or illnesses requiring medical treatment, Ms. Hulsey only reported that she had fluid in her left knee and leg.

**RESPONSE:** This fact is disputed. As discussed in the previous response, the referenced intake form does not contain accurate information obtained from Ms. Hulsey. Furthermore, both Jeremy Shivers and Billy Jack Newman have testified that Ms. Hulsey reported to the jail that Ms. Hulsey was seriously ill, that she had just been to a hospital and was on her way to a hospital at the time of her arrest, that she had an apparent stroke, and that she was suffering from a blood infection. See Deposition of Billy Jack Newman at p. 14, ln. 12 - 16; p. 37, ln. 2 - 5; and p. 40, ln. 9 - 13 and Deposition of Jeremy Shivers at p. 24, ln. 10 - 14 and p. 42, ln. 3 - 17.

Furthermore, Billy Jack Newman testified that Ms. Hulsey's serious illness was obvious at the time she was being booked. See Deposition of Billy Jack Newman at p. 36, ln. 1 - 11. Defendant Bryant confirmed that the handwritten intake form includes an area

for jail staff to include their own observations of Ms. Hulsey's condition. However, the printed form provided by Defendant Cheatham County is missing that information. See Deposition of Mark Bryant at p. 27, ln. 9 - p. 28, ln. 10.

It is reasonable, therefore, for the trier of fact to find that Ms. Hulsey did actually report her illness to the jail and to infer that Defendant Cheatham County has intentionally withheld or falsified evidence.

17. Ms. Hulsey denied having taken any drugs in the previous 24 hours.

**RESPONSE:** It is disputed that this is a material fact. For the reasons given in the previous two responses, it is also disputed that Defendant Cheatham County accurately recorded Ms. Hulsey's responses while she was being booked. There is also no evidence that Ms. Hulsey did take any drugs in the twenty-four hours prior to her arrest. It is otherwise undisputed that Ms. Hulsey had not taken drugs twenty-four hours prior to her arrest and reported the same to Defendant Cheatham County.

18. After she was booked into the Jail, Ms. Hulsey was housed in the dorm with the general female population, where she remained from Thursday, October 6 through Sunday, October 9, 2016.

**RESPONSE:** This fact is disputed. Defendant Cheatham County's own logs and records reflect that Ms. Hulsey remained in the booking area until being moved to the "Big Dorm" at 11:13 p.m. on October 9, 2016. See Booking Logs for October 6 through October 9, 2016.

19. Ms. Hulsey did not request medical treatment through the jail's kiosk system from October 6 - 9, 2016.

**RESPONSE:** It is disputed that this is a material fact. As stated above, Ms. Hulsey was not in the "Big Dorm" where the kiosk system is located to make a request for medical treatment. However, she constantly asked for help while in the jail. See Deposition of Billy Jack Newman at p. 115, ln. 3 - 8.

20. As of October 2016, Cheatham County had contracted with Quality Correctional Health Care (QCHC) to provide on-site health services to inmates and detainees in the Cheatham County Jail.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. This fact is otherwise undisputed for the purposes of this motion.

21. A nurse employed by QCHC, Defendant Jessica Plank, provided on-site coverage at the Jail for forty (40) hours per week.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. This fact is otherwise undisputed for the purposes of this motion.

22. Ms. Plank's regular hours of the jail were Monday though Friday from 6:00 a.m. to 2:30 p.m.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. This fact is otherwise undisputed for the purposes of this motion.

23. Ms. Plank was also available seven days a week, 24 hours a day by telephone on an as-needed basis in case any Sheriff's Office employees needed to reach her.

**RESPONSE:** This fact is undisputed for the purposes of this motion.

24. Ms. Plank was supervised by a physician, Dr. Donald Kern.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. This fact is otherwise undisputed for the purposes of this motion.

25. Dr. Kern would visit the Cheatham County Jail once a week to see inmates and detainees.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. This fact is otherwise undisputed for the purposes of this motion.

26. Dr. Kern also was available on an on-call basis seven days a week, 24 hours a day.

**RESPONSE:** This fact is undisputed for the purposes of this motion.

27. Inmates and detainees at the Cheatham County Jail are able to place sick calls on a daily basis.

**RESPONSE:** This fact is disputed as written. While it is undisputed that protocols were in place to permit detainees to request sick calls through the kiosk, the kiosk system was not available to detainees being held in the booking area. Those

detainees would have to make request directly to jail staff. See Deposition of Billy Jack Newman at p. 115, ln. 3 - 8.

28. Cells in the Jail are equipped with kiosk such that inmates and detainees can submit written requests for medical treatment.

**RESPONSE:** This fact is disputed as written. The kiosk was not in every cell but was located in the common area of the Big Dorm. The kiosk was not available to detainees, such as Ms. Hulsey, who were being held in the booking area. See Deposition of Billy Jack Newman at p. 115, ln. 3 - 8.

29. Ms. Hulsey saw Ms. Plank for the first time on October 10, 2016.

**RESPONSE:** It is disputed that this is a material fact for the issues in this motion. However, this fact is otherwise undisputed for the purposes of this motion.

30. Dr. Nolan agreed during his deposition that symptoms of drug withdrawal could have appeared similar to someone who had the same infection, bacteremia, as Ms. Hulsey.

**RESPONSE:** It is disputed that this is a material fact. This fact is disputed as written. Dr. Nolan indicated that **some** of the symptoms could be similar between bacteremia and drug withdrawal, specifically each could broadly have flu-like symptoms. See Deposition of Dr. Nolan at p. 25, ln. 17 - 24. Dr. Nolan went on to testify, however, that once Ms. Hulsey demonstrated a seizure or seizure like symptom, it was obvious that she needed to be transferred to a hospital and evaluated by a physician. See Deposition

of Dr. Nolan at p. 26, ln. 6 - 21.

Furthermore, both Defendant Cheatham County and Nurse Plank admitted that drug withdrawal is a serious medical condition that has to be monitored by medical staff. See Deposition of Johnny J. Hannah, Rule 30(b)(6) Designee for Defendant Cheatham County at p. 50, ln. 20 - p. 51, ln. 8 and Deposition of Jessica (Plank) Treichler at p. 52, ln. 18 - 20 and p. 78, ln. 9 - 14. However, none of Defendant Cheatham County's staff reported to any medical staff that they believed Ms. Hulsey's symptoms were due to drug withdrawal. See Deposition of Jessica (Plank) Treichler at p. 90, ln. 1 - 3. Therefore, regardless of whether Defendant Cheatham County's staff believed Ms. Hulsey was suffering from an infection or drug withdrawal, they knew they needed to contact medical staff to report their observations but failed to do so.

31. The Defendants' expert, Dr. Juli Horton would have expected Ms. Hulsey to have several non-specific, flu-like symptoms as of October 6, 2016, which are usually mimicked in someone experiencing withdrawal.

**RESPONSE:** It is disputed that this is a material fact. As discussed in the above response, both drug withdrawal and the infection Ms. Hulsey was experiencing are considered to be serious medical conditions. This was also admitted by Dr. Horton in her deposition. See Deposition of Dr. Horton at p. 44, ln. 6 - 10. Dr. Horton was unable to give an opinion about whether Ms. Hulsey was actually suffering from drug withdrawal, though, and also admitted that the two are not exclusive to one another. Dr. Horton admitted that having both could certainly exacerbate the seriousness of a person's condition. See Deposition of Dr. Horton at p. 43, ln. 6 - 9; p. 44, ln. 2 - 5; and p. 44, ln. 25 - p. 45, ln. 5.

It is otherwise undisputed that Dr. Horton would have expected Ms. Hulsey to have flu-like symptoms with either drug withdrawal or an infection.

Furthermore, beyond the general flu-like symptoms Ms. Hulsey was having, she also experienced a seizure or seizure-like event in front of jail staff. Dr. Horton admitted that a seizure is a serious medical condition that requires contacting a doctor or taking Ms. Hulsey to a hospital. See Deposition of Dr. Horton at p. 52, ln. 15 - p. 53, ln. 8.

32. Dr. Nolan believes that blood cultures were necessary to differentiate between whether someone had bacteremia or was suffering from drug withdrawals.

**RESPONSE:** It is disputed that this is a material fact. This statement is also disputed as written. Dr. Nolan testified that a person's physical appearance **could** be similar for someone suffering from drug withdrawal or bacteremia. However, he further testified that it would have been obvious even to a layperson that Ms. Hulsey suffered a seizure or seizure-like episode which would have required her transfer to a hospital to be evaluated by a physician. See Deposition of Dr. Nolan at p. 26, ln. 6 - 21.

33. After Ms. Hulsey saw Ms. Plank on October 10, she was moved from the general population to a cell in the booking area where she could be observed on a medical watch.

**RESPONSE:** It is disputed that this is a material fact. This fact is also disputed as written. While it is undisputed that Ms. Hulsey was placed on medical observation sometime on October 10, 2016, that move was not recorded as being done pursuant to the direction of Nurse Plank. The "medical observations" made by jail staff

also did not include any actual medical information. The logged observation only included general activities such as sitting, sleeping, or showering. See Medical Observation Log for October 10, 2016, at Document No. 102-3 at PageID #: 786. Additionally, Nurse Plank testified that she first saw Ms. Hulsey on October 10, 2016, as she first came on duty at 6:00 a.m. and that Ms. Hulsey was already in her cell in booking. See Deposition of Jessica (Plank) Treichler at p. 91, ln. 16 - 19 and p. 92, ln. 5 - 22.

34. Ms. Plank saw Ms. Hulsey for the second time on October 11, 2016.

**RESPONSE:** It is disputed that this is a material fact. However, it is undisputed for the purposes of this motion that there is an entry on Ms. Plank's logs with a date of October 11, 2016, which purportedly corresponds to a physical encounter between Ms. Plank and Ms. Hulsey.

35. Sgt. Bryant called Ms. Plank at home at 9:45 p.m. to discuss Ms. Hulsey's condition with her.

**RESPONSE:** It is disputed that this is a material fact. The substance of the discussion between Defendant Bryant and Ms. Plank is also disputed between the two of them. Ms. Plank claims the she was only told what appeared in her notes, specifically that Defendant Bryant reported to her that Ms. Hulsey was not feeling well, that she had a headache, was panicking, and was continuing to have trouble with bowel movements. This conversation resulted in Ms. Hulsey being given Tylenol for her headache. See Deposition of Jessica (Plank) Treichler at p. 120, ln. 18 - p. 122, ln. 17. Ms. Plank also claims that she was never provided any vital signs by Defendant Bryant or any other jail staff. See

Deposition of Jessica (Plank) Treichler at p. 88, ln. 5 - 15 and p. 160, ln. 7 - 12.

Defendant Bryant, on the other hand, claimed that he specifically told Ms. Plank that Ms. Hulsey was complaining of pain, that she was panicking, and that she did not feel good. He also claims to have provided the nurse with Ms. Hulsey's vital signs and that was the whole purpose of the call. As mentioned above, however, Ms. Plank did not record any vital signs nor did Defendant Bryant. Defendant Bryant also claims he never told Ms. Plank about Ms. Hulsey having a bowel movement because that had not happened at that point in time. See Deposition of Mark Bryant at p. 44, ln. 3 - p. 47, ln. 10 and p. 49, ln. 22 - p. 50, ln. 6. Both agree, however, that Defendant Bryant did not tell Ms. Plank that Ms. Hulsey had experienced a seizure in front of jail staff. See Deposition of Jessica (Plank) Treichler at p. 98, ln. 18 - p. 99, ln. 5.

36. Sgt. Bryant testified in his deposition that he told Ms. Plank that Ms. Hulsey was complaining of pain, that she did not feel well, and that she was panicking.

**RESPONSE:** It is undisputed that this was generally part of his testimony in his deposition. However, his specific testimony speaks for itself.

37. Sgt. Bryant had taken Ms. Hulsey's vital signs, which were normal, and gave that information to Ms. Plank.

**RESPONSE:** It is undisputed that Defendant Bryant testified that he took Ms. Hulsey's vital signs and that he claimed that they were normal. It is disputed whether he actually took her vital signs, which vital signs were taken, whether those vital signs were normal, and whether he communicated that information to Ms. Plank. See response to No.

35 above. In addition to the dispute between Ms. Plank and Defendant Bryant, because he was required to record these types of events and failed to do so, the trier of fact could infer that Defendant Bryant was not being honest about these statements. In fact, Defendant Cheatham County's Rule 30 designee indicated that any time a nurse gets called, then the officer making the call should log that interaction. However, Defendant Bryant claimed that he had not logged such calls for years without ever getting in trouble. Therefore, he figured it was okay. See Deposition of Johnny Hannah at p. 51, ln. 4 - 8 and Deposition of Mark Bryant at p. 55, ln. 18 - 24.

38. Ms. Plank directed Sgt. Bryan to give Ms. Hulsey Tylenol and place her on medical watch.

**RESPONSE:** This statement is disputed as written. It is undisputed that Ms. Plank instructed Defendant Bryant to administer over-the-counter Tylenol to Ms. Hulsey. The cited reference by Defendant Cheatham County does not support the claim that Ms. Plank directed Defendant Bryant to place Ms. Hulsey on medical watch. Defendant Bryant, in fact, claims to have taken Ms. Hulsey from the dorm to booking prior to calling Ms. Plank. See Deposition of Mark Bryant at p. 47, ln. 11 - 15.

39. The Jail's medication administration records confirm that Ms. Hulsey received Tylenol on October 11, 2016.

**RESPONSE:** It is disputed that this is a material fact. It is undisputed that the medication records reflect Ms. Hulsey was given a Tylenol. However, those records are only as good as the people entering the information into them. The trier of fact can infer,

based on the repeated failure to properly log information concerning Ms. Hulsey, that those records are not accurate.

40. Mr. Bryant then took Ms. Hulsey from her dorm to the booking area at 9:50 p.m. so she could be placed on medical watch again.

**RESPONSE:** It is disputed that this is a material fact. This statement is also vague in terms of date and the statement that Ms. Hulsey was "then" "placed on medical watch again." However, to the extent that Ms. Hulsey was transferred from the "Big Dorm" to the booking area by Defendant Bryant on the evening of October 11, 2016, that fact is undisputed for the purposes of this motion.

41. At approximately 8:30 a.m. on October 12, 2016, Ms. Hulsey told Officer Brandon Reasonover that she was not feeling well and that she wanted to see the nurse.

**RESPONSE:** It is disputed that this is a material fact. Ms. Hulsey had been telling jail staff she was not feeling well the entire time she was in custody of Defendant Cheatham County. This statement also has no citation to the record. This fact is otherwise undisputed for the purposes of this motion.

42. Ms. Plank saw Ms. Hulsey for a third time on October 12, 2016 before she was later found unresponsive.

**RESPONSE:** It is disputed that this is a material fact. This fact is otherwise undisputed for the purposes of this motion.

Respectfully submitted,

MOSELEY & MOSELEY
ATTORNEYS AT LAW

BY: /s/ James Bryan Moseley
    James Bryan Moseley, No. 021236
Attorneys for Plaintiff

237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
615/ 254-0140
Fax: 615/ 244-2270

### CERTIFICATE OF SERVICE

I hereby certify that on this the 3rd day of July, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties, if any, will be served separately. Parties may access this filing through the Court's electronic filing system.

| | |
|---|---|
| Jeffrey Beemer, Esq. | Robyn Williams, Esq. |
| Ariel M. Kelly, Esq. | Cassandra M. Crane, Esq. |
| 424 Church St., Suite 800 | 211 Seventh Ave. N, Suite 500 |
| Nashville, Tennessee 37219 | Nashville, Tennessee 37219 |
| Attorneys for Defendant Cheatham County | Attorney for Individual County Defendants |

Marc Dedman, Esq.
**SPICER RUDSTROM, PLLC**
414 Union Street, Suite 1700
Nashville, Tennessee 37219
Attorney for Defendant Plank

    /s/ James Bryan Moseley
    James Bryan Moseley

Copy to:    Raymond T. Throckmorton, III, Esq.